UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VARISCITE NY FOUR, LLC AND VARISCITE NY FIVE, LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>NEW YORK STATE CANNABIS CONTROL BOARD; NEW YORK STATE OFFICE OF CANNABIS MANAGEMENT; TREMAINE WRIGHT; AND CHRIS ALEXANDER,<br><br>*Defendants.* | **COMPLAINT FOR**<br><br>1. **42 U.S.C. § 1983 DORMANT COMMERCE CLAUSE**<br><br>2. **DECLARATORY JUDGMENT**<br><br>Civil Action No.: 1:23-CV-1599 (DNH/CFH) |

## INTRODUCTION

Plaintiffs Variscite NY Four, LLC ("Variscite Four") and Variscite NY Five, LLC ("Variscite Five") (collectively "Plaintiffs") bring this action against defendants New York State Cannabis Control Board (the "Board"); New York State Office of Cannabis Management ("OCM"); Tremaine Wright ("Wright"), and Chris Alexander ("Alexander")(collectively "Defendants"). Plaintiffs are suing Defendants over Defendants' unconstitutional application program for adult use retail dispensary cannabis licenses (the "Adult Use Application Program").

## PARTIES

1. Plaintiff Variscite NY Four, LLC is a limited liability company organized under the laws of the State of New York.

2. Plaintiff Variscite NY Five, LLC is a limited liability company organized under the laws of the State of New York.

3. Defendant New York State Cannabis Control Board is a government-appointed board that the Marijuana Regulation and Taxation Act established to promulgate rules and regulations for the New York cannabis industry and licensing.

4. Defendant New York Office of Cannabis Management is an office of the State of New York.

5. Defendant Wright is the Chairwoman of the Board. Plaintiffs sue Ms. Wright in her official capacity.

6. Defendant Alexander is the Executive Officer of the New York Office of Cannabis Management. Plaintiffs sue Mr. Alexander in his official capacity.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. section 1331 because the action involves questions under the United States Constitution.

8. The Court has personal jurisdiction over the Board because it is a citizen of New York.

9. The Court has personal jurisdiction over the OCM because it is a citizen of New York.

10. The Court has personal jurisdiction over Ms. Wright because, on information and belief, she is a domiciliary of New York and she took the actions complained of herein while in New York.

11. The Court has personal jurisdiction over Mr. Alexander because, on information and belief, he is a domiciliary of New York and he took the actions complained of herein while in New York.

12. Venue is proper in this Judicial District under 28 U.S.C. section 1391(b)(1) because, on information and belief, the Board and the OCM are divisions of the State, the laws and regulations challenged herein were passed in Albany, and Defendants performed the actions complained of herein while within this Judicial District.

## RELEVANT FACTS

**A. Defendants' Adult Use Application Program Favors New York Residents in Violation of the Dormant Commerce Clause**

13. On September 27, 2023, the OCM adopted or amended Regulations in Chapter II of Subtitle B of Title 9 of the Official Compilation of Codes, Rules and Regulations of the State of New York (the "Cannabis Regulations").

14. Section 120.7 provides the method of "Application Eligibility and Evaluation."

15. Under Section 120.7(a)(1), "An applicant shall provide information in a form and manner as prescribed by the Board, which shall demonstrate the eligibility for the license type being sought[.]"

16. Under Section 120.7(b) (Applicant Review), "An applicant for an adult-use cannabis license shall be reviewed and evaluated in an order and manner determined by the Board, based on provisional, social and economic equity status *or any additional criteria to be set by the Board* at the time of the opening of the application period."

17. Under Section 120.7(c) (Approval), "*The Board may approve licenses* using mechanisms, including, but not limited to, scoring, compliance-based evaluation, *qualified lottery, randomized ordering*, or any combination thereof."

18. Under Section 120.7(c)(1), "*The Board will determine the eligibility criteria for each license type*, including provisional licenses." Under Section 120.7(c)(2), "*The Board may prioritize application submission, review, selection and issuance* by region, license type, provisional status, social and economic equity status, *or any other criteria the Board may determine*."

19. Under Section 120.7(c)(3), "(3) *Application submission, review, selection, and issuance may be prioritized by groupings* consistent with section 87 of the Cannabis Law, such as: (i) *A group consisting only of applications that demonstrate the applicants are eligible for extra priority as defined in section 121.1 of this Title* provided the applicant is seeking to qualify as a social and economic equity applicant[.]"

20. Under Section 121.1(k) (Extra Priority), "(1) A person who demonstrates that they are an individual *from a community disproportionately impacted by the enforcement of cannabis prohibition* may receive extra priority if: (i) they have an income lower than eighty percent (80%)

3

of the median income of the county in which the applicant resides; and (ii) *was convicted of a marihuana-related offense* prior to the effective date of the Marihuana Regulation and Taxation Act, or had a parent, guardian, child, spouse, or dependent, or was a dependent of an individual who, prior to the effective date of the Marihuana Regulation and Taxation Act, was convicted of a marihuana-related offense."

21. Under Section 121.1(d)(2), a person is from a community disproportionately impacted by the enforcement of cannabis prohibit if they lived in such a community for an aggregate of five of the first eighteen years of their life or an aggregate of seven years of their life.

22. Under Section 121.1(k)(3) "An applicant seeking to qualify for extra priority shall provide proof of residency, income, and conviction, as prescribed by the Board."

### a. *The Adult Use Application Program*

23. Defendants required applicants to submit their applications online through Defendants' New York Business Express application website the ("Application System") (**Exhibit 1** (containing a printout of said system)). Defendants accepted applications through the system from October 4, 2023 to December 18, 2023.

24. The Application System confirms that Defendants will award "extra priority" only for convictions in New York. *See* **Exhibit 1** at p. 34.

25. For "extra priority," the Application System requires an applicant to prove its 51% owner lived in a community disproportionately impacted by the enforcement of cannabis prohibition for five years before turning 18 years old or seven years at any point in the person's life. The applicant must enter addresses accounting for five or seven years, as applicable, and the applicant is required to select the county of the addresses from a dropdown list in the Application System that provides only counties in New York. An applicant has no ability to submit an address that is in a county outside of New York.

26. To prove residence in a community disproportionately impacted by the enforcement of cannabis prohibition, the applicant must also provide documentation of the majority owner's residence. The acceptable documentation favors New York residents.

27. For example, an applicant may submit a "NYS Driver License"; "NYS Non-Driver"; "IDNYC Card"; "NYS Learner Permit issued by NYS DMV"; but an applicant cannot submit a driver's license or identification card from another state.

28. An applicant may submit "Employment offer or notice of pay that shows an employer provided housing located in NYS, including seasonal housing," but may not submit documentation of employer-provided housing outside of New York.

29. An applicant may provide a "Jury Summons, Court Order, or other document from a court within NYS," but may not submit equivalent documents from outside of New York.

30. An applicant may submit a "Letter from a charitable organization registered with the NYS Attorney General that provided services to the applicant in the ordinary court attesting to the applicant's NYS residence," but may not provide a letter from a charitable organization not registered in New York or that provided housing to the applicant's majority owner outside of New York.

31. An applicant may provide a "Document addressed to the applicant by a local government in NYS, NYS government agency, or the federal government," but the applicant may not submit documents from other state governments.

### B. Plaintiffs Satisfy All Application Requirements Except the Unconstitutional New York Preferences

32. Variscite Four applied for a License in the application program. Variscite Four satisfies every requirement for inclusion in the "Extra Priority" batch for application review, except the unconstitutional preferences for New York residents. Variscite Four is 51% owned by an individual who was convicted of a cannabis crime under California law rather than New York law. He has an income lower than 80% of the median income of Los Angeles County, where he resides. He lived in a community disproportionately impacted by the enforcement of cannabis prohibition for more than seven (7) years.

33. Variscite Five applied for a License in the application program. Variscite Five satisfies every requirement for inclusion in the "Extra Priority" batch for application review, except the unconstitutional preferences for New York residents. Variscite Five is 51% owned by an individual who was convicted of a cannabis crime under California law rather than New York law. He has an income lower than 80% of the median income of Los Angeles County, where he resides. He lived in a community disproportionately impacted by the enforcement of cannabis prohibition for more than seven (7) years.

C. **Defendants Intend to License Applicants in the CAURD Application Program Before the Adult Use Application Program Even Though the CAURD Program May Not Proceed Ahead of the Adult Use Application Program**

34. On March 31, 2021, the State of New York enacted the Marihuana Regulation & Taxation Act, with the short title of "Cannabis Law." NY CANBS § 1.1

35. Under section 10(19) of the Cannabis Law, "the initial adult-use cannabis retail dispensary license application period shall be opened for all applicants *at the same time*."

36. Notwithstanding that the Cannabis Law requires Defendants to open applications for all applicants at the same time, Defendants accepted applications only from a certain sub-category of applicants called Conditional Adult Use Retail Dispensary ("CAURD") applicants from August 25, 2022, through September 26, 2022.

37. Because the Cannabis Law does not permit Defendants to open the CAURD Application Program before the Adult Use Application Program, a group sued to enjoin Defendants from issuing Licenses under the CAURD Program. The lawsuit settled with Defendants agreeing to not process any further CAURD Applications until April 2024. However, Defendants did not agree to not proceed with the already-processed CAURD Applications and issue Licenses thereunder even before April 2024.

## D. The Court Should Enjoin Defendants from Issuing Any Licenses

38. As noted above, the Cannabis Law requires Defendants to open applications for all adult use retail cannabis licenses at the same time. NY CANBS § 10(19). That includes both the CAURD Application Program and the Adult Use Application Program. *Id*.

39. In fact, Defendants previously accepted CAURD Applications before Adult Use Applications. A group of potential applicants for the Adult Use Application Program sued in the New York Supreme Court. *Carmine Fiore, et al. v. New York State Cannabis Control Board*, Index No. 907282-23 (Sup. Ct., Albany Cnty., 2023).

40. In the above-referenced matter, the New York Supreme Court issued a preliminary injunction against Defendants proceeding with licensing under the CAURD Application Program because Defendants did not proceed with the Adult Use Application Program at the same time. While that preliminary injunction was in place, Defendants opened the Adult Use Application Program on October 4, 2023.

41. The parties settled and dismissed the preliminary injunction in exchange for, among other things, Defendants agreeing to not process further CAURD applications until April 2024 "in order to dedicate OCM's application and licensing resources in the next coming months to the current application and licensing window for adult use licenses, including [social and economic equity] applicant licenses."

42. The Adult Use Application Program is divided into three (3) pools: general; social and economic equity "priority"; and social and economic equity "extra priority."

43. Defendants published a Frequently Asked Questions document that explained the process. The document explains that "Applications for each license type will be collected during the application windows and pooled based on the license type sought, SEE certification and provisional status."

44. Thus, Defendants must not consider any category of Adult Use Application Program or CAURD Application Program applications before considering the social and economic equity "extra priority" pool.

45. Because Plaintiffs satisfy every requirement for the "extra priority" pool except the unconstitutional New York residency preferences, Defendants should process Plaintiffs' applications in the extra priority pool.

46. Because Plaintiffs should have received "extra priority" over all other applicant classes—whether general adult use, priority adult use, or CAURD—the Court should enjoin Defendants from issuing any Licenses.

47. Nevertheless, Plaintiffs do not ask the Court to enjoin Defendants from permitting the CAURD Applicants who are fully licensed and operational as of the date of the Complaint from operating.

## FIRST CAUSE OF ACTION
### (Dormant Commerce Clause, 42 U.S.C. § 1983)
### (Plaintiffs Against All Defendants)

48. Plaintiffs reallege and incorporate herein by reference each of the allegations set forth in the preceding paragraphs of the Complaint as though fully set forth herein.

49. A state, including its subdivisions, may not enact laws that discriminate against citizens of other states. *See, e.g., Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449 (2019); *Fulton Corp. v. Faulkner*, 516 U.S. 325, 116 S. Ct. 848 (1996); *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93 (1994); and *Dean Milk Co. v. Madison*, 340 U.S. 349 (1951).

50. New York residents are more likely than out-of-state residents to have been convicted of a cannabis crime in New York, or to have a spouse, parent, dependent, or child convicted of a cannabis crime in New York. Thus, the law discriminates against out of state residents on its face in violation of the dormant Commerce Clause of the United States Constitution.

51. The Application System does not permit applicants to prove residence in a community disproportionately impacted by the enforcement of cannabis prohibition if that community is outside of New York. Thus, the application system discriminates against out of state residents on its face in violation of the dormant Commerce Clause of the United States Constitution.

52. Defendants violated Plaintiffs' rights by depriving Plaintiffs of the opportunity to fairly compete for a license to operate a storefront retail cannabis dispensary, in violation of the dormant Commerce Clause.

53. Injunctive relief is necessary to prevent Defendants from proceeding with the application program, or enforcing the unconstitutional Regulations that favor New York residents over out-of-state residents.

54. Injunctive relief is necessary to prevent Defendants from processing any applications for a storefront cannabis dispensary license Defendants received in the Application Program because the residency preferences violate the United States Constitution and subject Plaintiff to serious, concrete, and irreparable injuries.

## SECOND CAUSE OF ACTION
### (Declaratory Relief, 28 U.S.C. § 2201)
### (Plaintiffs Against All Defendants)

55. Plaintiffs reallege and incorporate herein by reference each of the allegations set forth in the preceding paragraphs of the Complaint as though fully set forth herein.

56. The Application Program violates the dormant Commerce Clause of the United States Constitution. An actual controversy exists between Plaintiffs and Defendants as to whether Defendants may proceed with the Adult Use Application Program that favors New York residents over out-of-state residents.

57. Declaratory relief is necessary to resolve this dispute.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief as follows:

1. For the first claim, an injunction:

   a. Prohibiting Defendants from processing any applications for Licenses from the Adult Use Application Program held from October 4 through December 18, 2023.

   b. Prohibiting Defendants from taking any further steps to process any applications for storefront cannabis dispensary licenses from the CAURD Application Program held from

August 25 to September 26, 2022, or award any further Licenses thereunder, aside from the applicants who are fully licensed and operational as of the date the Complaint in this Action was filed. Plaintiffs do not ask the Court to enjoin Defendants from permitting the CAURD Applicants who are fully licensed and operational as of the date of the Complaint from operating.

      c. Prohibiting Defendants from enforcing the any portions of the Cannabis Law or Cannabis Regulations that favor New York residents over out-of-state residents, including the Codes R. & Regs. tit. 9 § 121.1(k) requirement that an applicant be 51% owned by a person with a conviction of a cannabis offense under New York state law in order to qualify for "extra priority."

      d. Prohibiting Defendants from using an Application System that does not permit applicants to prove residence in a community disproportionately impacted by the enforcement of cannabis prohibition if that community is outside of New York.

2. For the second claim, a declaration that:

    a. Codes R. & Regs. tit. 9 § 121.1(k) violates the dormant Commerce Clause.

    b. Defendants cannot proceed with processing or issuing any Licenses, whether Adult Use or CAURD, because of the unconstitutional Section 121.1(k).

    c. Defendants cannot proceed with processing or issuing any Licenses, whether Adult Use or CAURD, because of the unconstitutional Application System does not permit applicants to prove residence in a community disproportionately impacted by the enforcement of cannabis prohibition if that community is outside of New York.

3. An award of attorneys' fees and costs.
4. For such other and further relief as this Court shall deem appropriate.

Dated: December 18, 2023                  Respectfully submitted,

                                            **E. STEWART JONES HACKER MURPHY, LLP**

By:   */s/ Thomas J. Higgs*
        Thomas J. Higgs, Esq.
        Bar Roll No.: 106047

>*Attorneys for Plaintiffs – Local Counsel*
>28 Second Street
>Troy, NY 12180
>(518) 274-5820
>Email: thiggs@joneshacker.com

**JEFFREY M. JENSEN**

By:    */s/ Jeffrey M. Jensen*
>Jeffrey M. Jensen, Esq.
>*Pro Hac Vice – Admission Pending*
>New York Reg. No.: 5375704
>*Attorney for Plaintiffs – Lead Counsel*
>9903 Santa Monica Blvd. #890
>Beverly Hills, CA 90212
>(310) 909-7043
>Email: jeff@jensen2.com