UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

VARISCITE NY FOUR, LLC AND VARISCITE NY
FIVE, LLC,

               *Plaintiffs*,

    v.

NEW YORK STATE CANNABIS CONTROL
BOARD; NEW YORK STATE OFFICE OF
CANNABIS MANAGEMENT; TREMAINE
WRIGHT; AND CHRIS ALEXANDER,

               *Defendants.*

Civil Action No.: 1:23-cv-01599
(DNH/CFH)

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

Jeffrey M. Jensen, Esq.
*Pro Hac Vice*
New York Reg. No.: 5375704
*Attorney for Plaintiffs – Lead Counsel*
9903 Santa Monica Blvd. #890
Beverly Hills, CA 90212
(310) 909-7043
Email: jeff@jensen2.com

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................ 3

II.    STATEMENT OF FACTS .............................................................. 5

III.   ANALYSIS ...................................................................................... 9

  A.  Plaintiffs Have Shown a Likelihood of Success on the Merits ............................ 9

    1.  *The Adult Use Application Program Discriminates Against Interstate Commerce and Falls Within the First Tier Analysis* ........................................ 9

    2.  *Plaintiffs Satisfy All Requirements for "Extra Priority" Except the Unconstitutional Residency Requirements* .................................................... 12

    3.  *The Residency Preferences Do Not Advance a Legitimate Local Purpose that Cannot Be Adequately Served by Reasonable Nondiscriminatory Alternatives* 13

  B.  Plaintiffs Will Suffer Irreparable Harm Absent an Injunction ............................ 15

  C.  The Balance of Equities Favors Plaintiffs .................................................. 17

  D.  An Injunction Is in the Public Interest ...................................................... 18

  E.  The Court Should Not Require an Injunction Bond ............................... 19

IV.   PRELIMINARY RELIEF IS WARRANTED ON AN EXPEDITED BASIS 20

V.    CONCLUSION ............................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*AIM Int'l Trading, LLC v. Valcucine SpA*, 188 F. Supp. 2d 384 (S.D.N.Y. 2002) .............................. 9

*Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) ......... 15

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth*., 476 U.S. 573 (1986)............................. 9

*Color Me House, Inc. v. Discovery Commc'ns, Inc*., Case No. C12-5935-RJB, 2013 WL 1283806 (March 27, 2013)............................................................................................................................ 19

*Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338-39 (2008) ....................................................... 13

*Finch v. Treto*, No. 22 C 1508, 2022 WL 2073572 (N.D. Ill. June 9, 2022)...................................... 15

*GoTo.com, Inc. v. Walt Disney Co*., 202 F.3d 1199 (9th Cir. 2000) .................................................. 19

*Gov't Emples. Ins. Co. v. Relief Med., P.C*., 554 F. Supp. 3d 482 (E.D.N.Y. 2021).......................... 9

*Granholm v. Heald*, 544 U.S. 460 (2005)........................................................................................... 13

*Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630 (7th Cir. 2005) ....................................... 16

*Lowe v. City of Detroit*, 544 F. Supp. 3d 804 (E.D. Mich. 2021) ...................................................... 14

*Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 812 (E.D. Mich. 2021).............................................. 13

*Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 816 (E.D. Mich. 2021).............................................. 15

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)........................................................................... 15

N.Y. Comp. Codes R. & Regs. tit. 9, § 116.1 ...................................................................................... 5

*Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, 554 F. Supp. 3d 177 (D. Me. 2021) ...... 14

*Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine*, No. 21-1719, 2022 WL 3442203 (1st Cir. Aug. 17, 2022).................................................................................................. 14

*NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913 (D. Me. Aug. 14, 2020)............................................................................................................................... 13, 16

*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) ................................................................................ 9

*Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865 (7th Cir. 2009).............. 16

*Quezada v. BP Prods. N. Am., Inc*., No. 06 CV 5378 (SJ), 2006 WL 3837720 (E.D.N.Y. Dec. 1, 2006)............................................................................................................................................... 16

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991)...... 16

*South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2091 (2018) ............................................................ 13

*Starlight Sugar, Inc. v. Soto*, 114 F.3d 330 (1st Cir. 1997) ................................................................ 16

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832 (9th Cir. 2001) ............................. 16

*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2471 (2019)....................... 13

*Toigo v. Dep't of Health & Senior Servs.*, 549 F. Supp. 3d 985, 990 (W.D. Mo. 2021).................... 14

*Variscite NY One, Inc. v. New York*, 640 F. Supp. 3d 232 (N.D.N.Y. 2022), reconsideration denied, No. 122CV1013GLSDJS, 2023 WL 1420662 (N.D.N.Y. Jan. 31, 2023) ............................ 4, 9, 13

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .................................................................. 9

**STATUTES & REGULATIONS**

N.Y. Comp. Codes R. & Regs. tit. 9, § 116.1 ...................................................................................... 7

N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(a)(1)..................................................................... 8, 13, 14

N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(a)(2)(i)...................................................................... 8, 13

N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(a)(2)(ii).......................................................................... 8

N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(c) ................................................................................... 8

N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(c)(1)............................................................................... 8

N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(c)(2)(iii)..................................................................... 9, 13

N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(c)(2)(i-ii) ........................................................................ 8

NY CANBS §  1 ................................................................................................................................ 5, 7

NY CANBS §  3 .............................................................................................................................. 7, 13

NY CANBS § 10(19).......................................................................................................................... 8, 21

NY CANBS § 11(4)............................................................................................................................. 5, 7

2

## I.      INTRODUCTION

Plaintiffs Variscite NY Four, LLC ("Variscite Four") and Variscite NY Five, LLC ("Variscite Five")(collectively "Plaintiffs") hereby apply for a temporary restraining order and an order to show cause why a preliminary injunction should not issue to prevent Defendants New York State Cannabis Control Board (the "Board"), New York State Office of Cannabis Management ("OCM"), Tremaine Wright, and Chris Alexander (collectively "Defendants") from issuing any adult use retail dispensary cannabis licenses ("Licenses") under the application program held from October 4, 2023 through December 18, 2023 (the "Adult Use Application Program") or the Adult-Use Retail Dispensary ("CAURD") application program held from August 25, 2022 through September 26, 2022 (the "CAURD Application Program").

On Monday, December 18, 2023, Plaintiffs filed their Complaint. On Tuesday, December 19, the Court assigned the case number.  On Wednesday, December 20, Plaintiff sent the Complaint and related papers to a process server for service on Defendants.

On Thursday, December 21, the Court admitted Plaintiffs' lead counsel pro hac vice. That same day, Plaintiffs' lead counsel emailed a courtesy copy of the Complaint, the Order to Show Cause for a temporary restraining order and preliminary injunction, and all related papers to the assistant attorney general and the assistant solicitor general who represented Defendants in the prior dormant Commerce Clause challenge before the Northern District of New York and the Second Circuit. Plaintiffs intend to send the Order to Show Cause and all related papers to a process server on Friday, December 22 for service on Defendants.

***Thus, Defendants and their counsel have been on notice of Plaintiffs' request for a TRO and have had possession of application for Order to Show Cause well before Plaintiffs filed the papers with the Court. Plaintiffs are not seeking relief without notice.*** (*See*, Jeffery M. Jensen's Attorney Affirmation in Support of Plaintiffs' Order to Show Cause to Enjoin Defendants ("Jensen Aff.") at ¶ 18.)

Plaintiffs ask this Court to enjoin Defendants from their knowing, voluntary, and continuing violation of Plaintiffs' constitutional rights. In violation of the dormant Commerce Clause of the U.S.

Constitution, Defendants award "extra priority" in issuing Licenses to applicants who have a majority owner with a cannabis conviction under New York law and can provide documentation that they lived in an area of New York that was disproportionately impacted by cannabis prohibition.

Plaintiffs meet every requirement for extra priority, except they are majority owned by persons whose cannabis convictions were in another state and they lived in disproportionately impacted areas in another state.

Plaintiffs seek preliminary relief to prevent Defendants from awarding Licenses, other than to the dispensaries that are already fully licensed and operating as of the filing of the Complaint.  The number of available Licenses is limited, and Plaintiffs will be unable to operate their business if Defendants award the available Licenses while the lawsuit is pending.  If the Court does not grant injunctive relief, Plaintiffs cannot obtain money damages at the end of the case because the Eleventh Amendment prohibits monetary awards against a state or officials acting in their official capacity.

In an earlier application program—the Conditional Adult-Use Retail Dispensary ("CAURD") Application Program—the Northern District of New York issued a preliminary injunction to prohibit Defendants from issuing Licenses for the five (5) geographic areas of New York where the plaintiff had applied for a License. *See, Variscite NY One, Inc. v. New York*, 640 F. Supp. 3d 232 (N.D.N.Y. 2022), *reconsideration denied*, No. 122-cv-1013 (GLS/DJS), 2023 WL 1420662 (N.D.N.Y. Jan. 31, 2023). The CAURD Application Program unconstitutionally favored New York residents because it required that applicants be majority owned by a person who was convicted of a cannabis offense in New York (or whose parent, child, or spouse was convicted) and the applicant have a significant New York presence, such as a bank account in the state. *Variscite NY One, Inc.*, 640 F. Supp. 3d  at 235.

Defendants appealed the preliminary injunction to the Second Circuit. While the appeal was pending, Defendants filed a motion to stay the preliminary injunction or to narrow it to one geographic area because all applicants were eligible only for their first-choice geographic area. ***The Second Circuit narrowed the preliminary injunction to the first-choice geographic area but otherwise left the injunction in place***. (*See*, Jensen Aff. at  Ex. 1) (emphasis added)).

Here, the Adult Use Application Program is not limited by geographic area. Thus, this Court

must enjoin Defendants from proceeding with their unconstitutional program statewide, both as to the Adult Use Application Program and the CAURD Application Program.

## II.     STATEMENT OF FACTS

### A.     The Adult Use Application Program Favors New York Residents

#### 1.     *The Cannabis Law*

On March 31, 2021, the State of New York enacted the Marihuana Regulation & Taxation Act, with the short title of "Cannabis Law."  NY CANBS § 1. Under Section 11 of the Cannabis Law, the OCM and the executive director have the power to prescribe the form of applications for cannabis licenses.  NY CANBS § 11(4).

#### 2.     *The Cannabis Regulations*

On August 3, 2022, the OCM adopted part 116 of Chapter II of Subtitle B of Title 9 of the Official Compilation of Codes, Rules and Regulations of the State of New York (as amended, the "Cannabis Regulations").  N.Y. Comp. Codes R. & Regs. tit. 9 ("NYCRR"), § 116.1, *et seq*.

Section 120.7 provides the method of "Application Eligibility and Evaluation." 9 NYCRR 120.7.  Under Section 120.7(a)(1), "[a]n applicant shall provide information in a form and manner as prescribed by the Board, which shall demonstrate the eligibility for the license type being sought[.]"

Under Section 120.7(b) (Applicant Review), "[a]n applicant for an adult-use cannabis license shall be reviewed and evaluated in an order and manner determined by the Board, based on provisional, social and economic equity status *or any additional criteria to be set by the Board* at the time of the opening of the application period." 9 NYCRR 120.7(b) (emphasis added).

Under Section 120.7(c) (Approval), "*[t]he Board may approve licenses* using mechanisms, including, but not limited to, scoring, compliance-based evaluation, *qualified lottery, randomized ordering*, or any combination thereof."  9 NYCRR 120.7(c) (emphasis added).

Under Section 120.7(c)(1), "*[t]he Board will determine the eligibility criteria for each license type*, including provisional licenses."  9 NYCRR 120.7(c)(2) (emphasis added).  Under Section 120.7(c)(2), "*[t]he Board may prioritize application submission, review, selection and issuance* by region, license type, provisional status, social and economic equity status, *or any other criteria the*

*Board may determine*."

Under Section 120.7(c)(3), "*[a]pplication submission, review, selection, and issuance may be prioritized by groupings* consistent with section 87 of the Cannabis Law, such as: (i) *A group consisting only of applications that demonstrate the applicants are eligible for extra priority as defined in section 121.1 of this Title* provided the applicant is seeking to qualify as a social and economic equity applicant[.]" 9 NYCRR 120.7(c)(3) (emphasis added).

Under Section 121.1(k) (Extra Priority), "[a] person who demonstrates that they are an individual *from a community disproportionately impacted by the enforcement of cannabis prohibition* may receive extra priority if: (i) they have an income lower than eighty percent (80%) of the median income of the county in which the applicant resides; and (ii) *was convicted of a marihuana-related offense* prior to the effective date of the Marihuana Regulation and Taxation Act, or had a parent, guardian, child, spouse, or dependent, or was a dependent of an individual who, prior to the effective date of the Marihuana Regulation and Taxation Act, was convicted of a marihuana-related offense." 9 NYCRR 121.1(k) (emphasis added).

Under Section 121.1(d)(2), a person is from a community disproportionately impacted by the enforcement of cannabis prohibit if they lived in such a community for an aggregate of five of the first eighteen years of their life or an aggregate of seven years of their life. 9 NYCRR 121.1(d)(2).

Under Section 121.1(k)(3), "[a]n applicant seeking to qualify for extra priority shall provide proof of residency, income, and conviction, as prescribed by the Board." 9 NYCRR 121.1(k)(3).

### 3.   *The Application System*

Defendants required applicants to submit their applications online through Defendants' New York Business Express application website the ("Application System").   Defendants accepted applications through the system from October 4, 2023 to December 18, 2023.

As discussed above, an applicant seeking "extra priority" in the licensing program must prove its majority owner was convicted of a cannabis crime.   The Application System confirms that Defendants will award "extra priority" only for convictions in New York.   (*See* Jensen Aff. at Ex. 2, p. 34).   The Application System provides priority only for applicants whose majority owners "have

been convicted of a marihuana-related offense in New York State before March 31, 2021, or have a spouse, parent, dependent, and/or child convicted of a marihuana-related offense in New York State prior to March 31, 2021, or was a dependent of someone convicted of a marihuana-related offense in New York State before March 31, 2021." (*Id.*)

Similarly, an applicant seeking "extra priority" in the licensing program must prove its majority owner lived in an area disproportionately impacted by cannabis prohibition.  The Application System requires an applicant to prove its 51% owner lived in a community disproportionately impacted by the enforcement of cannabis prohibition for five years before turning 18 years old or seven years at any point in the person's life.  The applicant must enter addresses accounting for five or seven years, as applicable, and the applicant is required to select the county of the addresses from a dropdown list in the Application System that provides only counties in New York.  (Application System Printout DIA (Jensen Aff. at Ex. 3). An applicant has no ability to submit an address that is in a county outside of New York. (*Id.*)

The applicant must also provide documentation to prove its majority owner's residence in a community disproportionately impacted by the enforcement of cannabis prohibition. The acceptable documentation favors New York. For example, an applicant may submit a "NYS Driver License," "NYS Non-Driver," "IDNYC Card," or a "NYS Learner Permit issued by NYS DMV," but an applicant cannot submit a driver's license or identification card from another state. (Jensen Aff. at Ex. 3). An applicant may submit an "[e]mployment offer or notice of pay that shows an employer provided housing located in NYS, including seasonal housing," but may not submit documentation of employer-provided housing outside of New York. (*Id.*) An applicant may provide a "Jury Summons, Court Order, or other document from a court within NYS," but may not submit equivalent documents from outside of New York. (*Id.*) An applicant may submit a "[l]etter from a charitable organization registered with the NYS Attorney General that provided services to the applicant in the ordinary court attesting to the applicant's NYS residence," but may not provide a letter from a charitable organization not registered in New York or that provided housing to the applicant's majority owner outside of New York. (*Id.*) An applicant may also provide a "[d]ocument addressed to the applicant by a local

7

government in NYS, NYS government agency, or the federal government," but the applicant may not submit documents from other state governments. (*Id*.)

**B.  Plaintiffs Satisfy All Application Requirements Except the Unconstitutional New York Preferences**

Variscite Four applied for a License in the application program.  (Jensen Aff. at ¶ 4). Variscite Four satisfies every requirement for inclusion in the "Extra Priority" batch for application review, except the unconstitutional preferences for New York residents. Variscite Four is 51% owned by an individual who was convicted of a cannabis crime under California law rather than New York law. (*Id*. at ¶ 5).  He has an income lower than 80% of the median income of Los Angeles County, where he resides. (*Id*.) He lived in a community disproportionately impacted by the enforcement of cannabis prohibition in California for more than seven years. (*Id*.)

Variscite Five applied for a License in the application program. (*Id*. at ¶ 4.) Variscite Five satisfies every requirement for inclusion in the "Extra Priority" batch for application review, except the unconstitutional preferences for New York residents. (*Id*. at ¶ 6) Variscite Five is 51% owned by an individual who was convicted of a cannabis crime under California law rather than New York law. (*Id*.) He has an income lower than 80% of the median income of Los Angeles County, where he resides.  He lived in a community disproportionately impacted by the enforcement of cannabis prohibition in California for more than seven years. (*Id*.)

**C.  Defendants Intend to License Applicants in the CAURD Application Program Before the Adult Use Application Program Even Though the CAURD Program May Not Proceed Ahead of the Adult Use Application Program**

Under section 10(19) of the Cannabis Law, "the initial adult-use cannabis retail dispensary license application period shall be opened for ***all applicants at the same time***."  NY CANBS § 10(19) (emphasis added).

Notwithstanding that the Cannabis Law requires Defendants to open applications for all applicants at the same time, Defendants accepted applications only from a certain sub-category of applicants called Conditional Adult Use Retail Dispensary ("CAURD") applicants from August 25, 2022, through September 26, 2022. *See, Variscite NY One, Inc.*, 640 F. Supp. 3d 232 .

Because the Cannabis Law does not permit Defendants to open the CAURD Application Program before the Adult Use Application Program, a group sued to enjoin Defendants from issuing Licenses under the CAURD Program.  The lawsuit settled with Defendants agreeing to not process any further CAURD Applications until April 2024. (Jensen Aff. at Ex. 4).  However, Defendants did not agree to not proceed with the already-processed CAURD Applications and issue Licenses thereunder even before April 2024. (*Id.*)

## III.   ANALYSIS

Courts apply the same standard for granting a temporary restraining order and a preliminary injunction.  *AIM Int'l Trading, LLC v. Valcucine SpA*, 188 F. Supp. 2d 384, 386 (S.D.N.Y. 2002).  The plaintiff must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm without a preliminary injunction; (3) the balance of equities favors the plaintiff; and (4) the injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008); and *Gov't Emples. Ins. Co. v. Relief Med., P.C.*, 554 F. Supp. 3d 482, 498 (E.D.N.Y. 2021).

### A.   Plaintiffs Have Shown a Likelihood of Success on the Merits

#### 1.   The Adult Use Application Program Discriminates Against Interstate Commerce and Falls Within the First Tier Analysis

A court evaluates a dormant Commerce Clause challenge using a two-tiered analysis.  *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986).  **At the first tier**, a court determines whether "a state statute directly regulates or discriminates against interstate commerce, or [whether] its effect is to favor in-state economic interests over out-of-state interests." *Id*. at 579.  **At the second tier**, absent such discrimination, if "a statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

The Adult Use Application Program directly discriminates against interstate commerce and falls into the first tier. As discussed above, an applicant seeking "extra priority" in the licensing program must prove its majority owner was convicted of a cannabis crime. The Application System

confirms that Defendants will award "extra priority" only for convictions in New York. (*See* Jensen Aff. Ex. 2, at p. 34.) The Application System provides priority only for applicants whose majority owners "have been convicted of a marihuana-related offense in New York State before March 31, 2021, or have a spouse, parent, dependent, and/or child convicted of a marihuana-related offense in New York State prior to March 31, 2021, or was a dependent of someone convicted of a marihuana-related offense in New York State before March 31, 2021." (*Id.*)

      Similarly, an applicant seeking "extra priority" in the licensing program must prove its majority owner lived in an area disproportionately impacted by cannabis prohibition. The Application System requires an applicant to prove its 51% owner lived in a community disproportionately impacted by the enforcement of cannabis prohibition for five years before turning 18 years old or seven years at any point in the person's life. The applicant must enter addresses accounting for five or seven years, as applicable, and the applicant is required to select the county of the addresses from a dropdown list in the Application System that provides only counties in New York. (Jensen Aff. at Ex. 3). An applicant has no ability to submit an address that is in a county outside of New York. (*Id.*)

      The applicant must also provide documentation to prove its majority owner's residence in a community disproportionately impacted by the enforcement of cannabis prohibition. The acceptable documentation favors New York. For example, an applicant may submit a "NYS Driver License", "NYS Non-Driver", "IDNYC Card", or a "NYS Learner Permit issued by NYS DMV", but an applicant cannot submit a driver's license or identification card from another state. (Jensen Aff. at Ex. 3). An applicant may submit an "[e]mployment offer or notice of pay that shows an employer provided housing located in NYS, including seasonal housing," but may not submit documentation of employer-provided housing outside of New York. (*Id.*) An applicant may provide a "[j]ury Summons, Court Order, or other document from a court within NYS," but may not submit equivalent documents from outside of New York. (*Id.*) An applicant may submit a "[l]etter from a charitable organization registered with the NYS Attorney General that provided services to the applicant in the ordinary court attesting to the applicant's NYS residence," but may not provide a letter from a charitable organization not registered in New York or that provided housing to the applicant's majority owner outside of New

York. (*Id*.) An applicant may provide a "[d]ocument addressed to the applicant by a local government in NYS, NYS government agency, or the federal government," but the applicant may not submit documents from other state governments. (*Id*.)

Defendants published a FAQ document for the Adult Use Application Program. (Jensen Aff. at Ex. 5.) Paragraph 57 provides information for proving residence in a disproportionately impacted community. (*Id*.) It provides a link to a PDF document titled Adult-Use Social and Economic Equity Applicant Overview. (Jensen Aff. at Ex. 6.) That PDF provides that "[a]pplicants wishing determine whether they are from a community disproportionately impacted can learn more here," with the "here" linked to a webpage titled "NYS Communities Disproportionately Impacted (CDI)." (*Id*.) The webpage provides vague information about how Defendants identified disproportionately impacted communities in New York, with insufficient information to allow a person to apply the same measurement to an area outside of New York. (Jensen Aff. at Ex. 7.) The webpage provides a link to an interactive map that identifies disproportionately impacted communities only in New York. (Jensen Aff. at Ex. 8.)

State programs fall into the first tier dormant Commerce Clause analysis if they "affirmatively discriminate against interstate commerce, either on their face or in 'practical effect.'" *Atl. Prince, Ltd. v. Jorling*, 710 F. Supp. 893, 895 (E.D.N.Y. 1989). A state program that is "facially neutral" nevertheless discriminates in practical effect if it bears disproportionately on nonresidents. *Id*. at 896.

In this case, the program requires a cannabis conviction in New York and provides applicants information to identify disproportionately impacted communities only in New York. Thus, the Adult Use Application Program discriminates on its face.

The Adult Use Application Program also discriminates in practical effect. New York residents are much more likely to have cannabis convictions in New York than non-residents. Residents are also much more likely to have lived in the past in a disproportionately impacted community in New York than non-residents. The program also discriminates in practical effect because, even if Defendants allow a non-resident to show that he/she lived in a disproportionately impacted community in another state, Defendants did not provide applicants reasonable access to information on how to prove areas

in other states meet Defendants' requirements for a disproportionately impacted community.  By contract, Nevada's social equity program accepts residency in a disproportionately impacted area in any state, and provides online instructions to prospective applicants residing out of state for determining whether their area of residence qualifies as a disproportionately impacted area. (Jensen Aff.  Ex. 11.) The online instructions link to a nationwide map prospective applicants can use to determine whether their out-of-state community is a disproportionately impacted community. (*Id*.)

In an earlier case, the Northern District of New York concluded that Defendants' CAURD Application Program fell within the first tier dormant Commerce Clause analysis because it required that applicants be majority owned by a person who was convicted of a cannabis offense in New York (or whose parent, child, or spouse was convicted) and the applicant have a significant New York presence, such as a bank account in the state.  *See Variscite NY One, Inc.*  This Court should likewise conclude the Adult Use Application Program falls within the first tier analysis.

### 2. *Plaintiffs Satisfy All Requirements for "Extra Priority" Except the Unconstitutional Residency Requirements*

Variscite Four applied for a License in the application program.  (Jensen Aff. at ¶ 4.) Variscite Four is 51% owned by an individual who was convicted of a cannabis crime under California law rather than New York law. (*Id*. at ¶ 5) He has an income lower than 80% of the median income of Los Angeles County, where he resides. (*Id*.) He lived in a community disproportionately impacted by the enforcement of cannabis prohibition in California for more than seven years. (*Id*.) Variscite Four meets all eligibility requirements for "extra priority" in the Adult Use Application Program except that its majority owner was convicted of a cannabis offense under California law rather than New York law and he lived in a community disproportionately impacted by cannabis prohibition in California rather than New York. (*Id*.)

Variscite Five applied for a License in the application program. (*Id*. at ¶ 4.) Variscite Five is 51% owned by an individual who was convicted of a cannabis crime under California law rather than New York law. (*Id*. at ¶ 6) He has an income lower than 80% of the median income of Los Angeles County, where he resides.  He lived in a community disproportionately impacted by the enforcement

of cannabis prohibition in California for more than seven years. (*Id*.) Variscite Five meets all eligibility requirements for "extra priority" in the Adult Use Application Program except that its majority owner was convicted of a cannabis offense under California law rather than New York law and he lived in a community disproportionately impacted by cannabis prohibition in California rather than New York. (*Id*.)

**3.      *The Residency Preferences Do Not Advance a Legitimate Local Purpose that Cannot Be Adequately Served by Reasonable Nondiscriminatory Alternatives***

In the first tier of the dormant Commerce Clause analysis—where a law discriminates against interstate commerce or in effect favors in-state economic interests—courts "generally str[ike] down the statute without further inquiry." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2471 (2019) (citing *Granholm v. Heald*, 544 U.S. 460, 472 (2005)). This includes striking down cannabis licensing laws with residency preferences or residency requirements because "State laws that discriminate against interstate commerce face 'a virtually per se rule of invalidity.'" *NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913, at *11 (D. Me. Aug. 14, 2020) (quoting *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2091 (2018); *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 812 (E.D. Mich. 2021) ("'[a] discriminatory law is virtually per se invalid . . . .'") (citing *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338-39 (2008)).

In this case, the Court must analyze the Adult Use Application Program under the first tier because the program favors New York residents over out-of-state residents on its face.  New York residents are more likely than non-residents to have been convicted of cannabis crimes in New York and to have lived in areas of New York that were disproportionately impacted by cannabis prohibition.

When Defendants CAURD Application Program was challenged before the Northern District of New York, the Court analyzed the program under the first tier and issued a preliminary injunction. *See Variscite NY One, Inc.* . The Court found that when Defendants attempted to satisfy their burden of showing the residency preferences were narrowly tailored to serve a legitimate local purpose that cannot be served by nondiscriminatory methods, Defendants could offer "no cogent response." *Id*. at 242.

13

Defendants appealed the preliminary injunction to the Second Circuit and, while the matter was on appeal, moved to stay or narrow the preliminary injunction. Defendants argued the Second Circuit should narrow the preliminary injunction because all applicants were considered for only their first-choice geographic area of New York, and therefore the preliminary injunction should not cover any other geographic area. The Second Circuit narrowed the preliminary injunction to cover only the Finger Lakes area, which was the plaintiff's first choice. The Second Circuit otherwise left the preliminary injunction in place.[1] Here, the Adult Use Application Program is not limited by geographic area, and the Court should enjoin the program as to the whole State.

Other jurisdictions are in accord.  In the only cannabis license dormant Commerce Clause challenge to reach a circuit court, the First Circuit affirmed a District of Maine injunction against a residency requirement.  *Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine*, No. 21-1719, 2022 WL 3442203, at *13 (1st Cir. Aug. 17, 2022); *see also, Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine*, No. 21-1719, 2022 WL 3442203, at *13 (1st Cir. Aug. 17, 2022); *Toigo v. Dep't of Health & Senior Servs.*, 549 F. Supp. 3d 985, 990 (W.D. Mo. 2021); *Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, 554 F. Supp. 3d 177 (D. Me. 2021); *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 813 (E.D. Mich. 2021); and *NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913, at *6 (D. Me. Aug. 14, 2020).

When a law falls into the first tier, the government bears the burden of proving the law "advance[s] a legitimate local purpose that ***cannot*** be adequately served by reasonable nondiscriminatory alternatives." *Dep't of Revenue*, 553 U.S. at 338 (quoting *Granholm*, 544 U.S. at 476) (emphasis added). "If the [first tier analysis] standard applies to a challenged law, the law is 'virtually invalid per se' and courts 'generally str[ike] down the statute without further inquiry.'"

---

[1]     Defendants also argued that the Second Circuit should stay the preliminary injunction because the plaintiff could not score enough points to win a license in light of the competition in the CAURD Application Program. The Second Circuit denied the stay. Regardless, the Adult Use Application Program, unlike the CAURD Application Program, is decided by lottery rather than a score.

Variscite NY One, Inc., 640 F. Supp. 3d at 241 (internal citations omitted). To the best of Plaintiffs' knowledge, no jurisdiction has successfully argued residency preferences or residency requirements serve a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory means.

**B.      Plaintiffs Will Suffer Irreparable Harm Absent an Injunction**

Plaintiffs will suffer multiple irreparable harms unless the Court enjoins Defendants from issuing any retail cannabis Licenses, whether under the Adult Use Application Program or the CAURD Application Program, other than the retail dispensaries that are fully licenses and operational as of the date of the Complaint.  *First*, Plaintiffs cannot obtain monetary damages instead of injunctive relief because of the Eleventh Amendment.

*Second*, "[i]n the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 448 (D. Conn. 2020); *see also, Gallagher v. N.Y. State Bd. of Elections*, 477 F. Supp. 3d 19, 41 (S.D.N.Y. 2020) ("Plaintiffs and Plaintiff-Intervenors have shown irreparable injury because they allege a violation of their constitutional rights in connection with election results that will soon be certified as final."); *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) ("[T]he constitutional violation alone, coupled with the damages incurred, can suffice to show irreparable harm."); and *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[T]here was no abuse of discretion in concluding that the Plaintiffs faced irreparable harm in the form of a deprivation of constitutional rights absent a preliminary injunction.").  Where a plaintiff's business is harmed by a constitutional violation (as will happen here because Plaintiff's business will not be allowed to open), the harm is irreparable even if the plaintiff's loss of business could be compensated with monetary damages. *Am. Trucking Associations*, 559 F.3d at 1059.

*Third*, aside from the constitutional violation, Plaintiffs will suffer the irreparable harm of being excluded from the New York storefront retail cannabis market unless the Court issues a preliminary injunction.  Defendants will issue only a limited number of storefront retail cannabis licenses.  (Jensen Aff.  Ex. 5, at p. 2.) Exclusion from the market is an irreparable harm. *See*, *Lowe v.*

*City of Detroit*, 544 F. Supp. 3d 804, 816 (E.D. Mich. 2021) ("[P]laintiff has demonstrated that she will suffer irreparable injury absent an injunction, as she would, at best, be significantly disadvantaged in applying for a recreational marijuana retail license (assuming fifty percent of the licenses are reserved for legacy applicants) and, at worst, be entirely eliminated from consideration for such a license (if all of the licenses are awarded to legacy applicants)."); and *Finch v. Treto*, No. 22 C 1508, 2022 WL 2073572, at *16 (N.D. Ill. June 9, 2022) ("If the court declined to grant injunctive relief as to the 2021 lotteries, it would allow the Department to proceed with issuing the first 185 licenses. Once those 185 licenses are issued, Plaintiffs' chances of obtaining their own licenses will be statistically narrowed, as the total number of licenses is capped at 500 by statute. In short, the court concludes Plaintiffs have satisfied the irreparable-harm requirement.").

**Fourth**, even if Plaintiff could somehow later enter the market, the delay in entering the market causes an irreparable harm. All advantages to early entrants in the market, such as access to customers who have not developed loyalty to other businesses, will have been claimed. *See, NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913, at *11 (D. Me. Aug. 14, 2020) ("I agree that the unique context of this new market suggests that the timing of a ruling in the Plaintiffs' favor is particularly important. The Plaintiffs are not seeking to enter an established [cannabis] market, where the significance of any further delay of their participation is likely diminished. Rather, the Plaintiffs are seeking to be in the first wave of [cannabis] licensees as a new market launches and are hoping to attract customers who have not yet developed allegiances."); *Quezada v. BP Prods. N. Am., Inc.*, No. 06 CV 5378 (SJ), 2006 WL 3837720 (E.D.N.Y. Dec. 1, 2006) (temporary inability to sell goods is irreparable harm of loss of good will); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."); *Starlight Sugar, Inc. v. Soto*, 114 F.3d 330, 332 (1st Cir. 1997) ("While it is true that injunctive relief is generally inappropriate where money damages can make a plaintiff whole, we have recognized that the loss of

16

a unique or fleeting business opportunity can constitute irreparable injury."); *Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630, 632 (7th Cir. 2005) ("[I]t is precisely the difficulty of pinning down what business has been or will be lost that makes an injury 'irreparable.'"); and *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 872–73 (7th Cir. 2009) ("The district court concluded that the harm to Pro's was irreparable because it was difficult to ascertain the specific amount of revenue being lost, and because damages might come too late to adequately compensate the plaintiff's business.").

### C.   The Balance of Equities Favors Plaintiffs

A preliminary injunction will not harm Defendants.  The Adult Use Application Program ran from October 4 to December 18, 2023.  Defendants have not begun issuing any Licenses under the Adult Use Application Program.

Defendants' CAURD Application Program was the subject of two prior preliminary injunctions.  To settle the most recent litigation, Defendants agreed to not process any further CAURD Applications until April 2024. (Jensen Aff. Ex. 4, at p. 7).  However, Defendants did not agree to not proceed with the already-processed CAURD Applications and issue Licenses thereunder even before April 2024. (*Id*.)

Applicants in the CAURD Application Program applied without any properties for their business premises, and applicants in the Adult Use Application Program were given a choice whether to apply with or without property.  Thus, no applicants were required to obtain property.  The only cost to applicants was the $1,000 application fee.  Moreover, even if the applicants had ongoing costs while the preliminary injunction is in place, "any such economic harm would be the result of these [cannabis license] applicants investing money before obtaining a license, which they did at their own risk." *Lowe* , 544 F. Supp. 3d, at 816 .

Moreover, applicants are aware from prior litigation that the CAURD Application Program and Adult Use Application Program are subject to challenge. Applicants had substantial notice in the press that the programs would likely be challenged.  News sources published articles such as *Pot Dispensaries–Wary of Another Lawsuit–Rush to Open in Buffalo* (Jensen Aff. at Ex. 9))and *I'm*

17

*Operating Under the Assumption that Somebody Is Filing Another Lawsuit Right Now*.  (Jensen Aff. at Ex. 10)).

    **D.**    <u>**An Injunction Is in the Public Interest**</u>

"[T]he public interest is best served by enjoining the enforcement of [a cannabis licensing] ordinance that is likely unconstitutional."  *Lowe*, 544 F. Supp. 3d at 816 .

The public interest is further served by protection of interstate participation in a cannabis market.  *See, Toigo*, 549 F. Supp. 3d at 996 ("The public interest is best served by the protection of [an applicant's] constitutional right to fully participate in the medical marijuana business in Missouri on the same footing as a Missouri resident, a right that is likely being violated by the State's durational residency requirement.").

    **D.**  <u>**The Court Should Enjoin Defendants from Issuing Any Licenses**</u>

As noted above, the Cannabis Law requires Defendants to open applications for all adult use retail cannabis licenses at the same time.  NY CANBS § 10(19).  That includes both the CAURD Application Program and the Adult Use Application Program.  *Id*.

Nevertheless, Defendants previously accepted CAURD Applications before Adult Use Applications.  A group of potential applicants for the Adult Use Application Program sued in the New York Supreme Court.  *Carmine Fiore, et al. v. New York State Cannabis Control Board*, No. 907282-23 (Sup. Ct., Albany Cnty.,  2023).  The New York Supreme Court issued a preliminary injunction against Defendants proceeding with licensing under the CAURD Application Program because Defendants did not proceed with the Adult Use Application Program at the same time.

While that preliminary injunction was in place, Defendants opened the Adult Use Application Program on October 4, 2023.  The parties settled and dismissed the preliminary injunction in exchange for, among other things, Defendants agreeing to not process further CAURD applications until April 2024 "in order to dedicate OCM's application and licensing resources in the next coming months to the current application and licensing window for adult use licenses, including [social and economic equity] applicant licenses." (Jensen Aff., Ex. 4,  at p. 7).

The Adult Use Application Program is divided into three pools: general; social and economic

equity "priority"; and social and economic equity "extra priority."  Defendants published a Frequently Asked Questions document that explained the process.  The document explains that "Applications for each license type will be collected during the application windows and pooled based on the license type sought, SEE certification and provisional status."  (FAQ (Decl. Jensen, Ex. 5) at 5.)  Thus, Defendants must not consider any category of Adult Use Application Program or CAURD Application Program applications before considering the social and economic equity "extra priority" pool.

Because Plaintiffs satisfy every requirement for the "extra priority" pool except the unconstitutional New York residency preferences, Defendants should process Plaintiffs' applications in the extra priority pool. Because Plaintiffs should have received "extra priority" over all other applicant classes—whether general adult use, priority adult use, or CAURD—the Court should enjoin Defendants from issuing any Licenses.

Nevertheless, Plaintiffs do not ask the Court to enjoin Defendants from permitting the CAURD Applicants who are fully licensed and operational as of the date of the Complaint from operating.

### E.     The Court Should Not Require an Injunction Bond

The Court should not require an injunction bond.  Plaintiffs are owned entirely by three individuals, two of whom are low-income individuals as required by Defendants' Adult Use Application Program.  (Jensen Aff. at ¶¶ 5, 6). This litigation, which seeks to vindicate Plaintiffs' constitutional rights, is being funded entirely by one of Plaintiffs' individual owners.  The Court should not require Plaintiffs to post a bond.

A district court has the discretion to determine that no injunction bond is required.  *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004); and *JTH Tax LLC v. Kukla*, No. 22-cv-01542 (JS) (JMW), 2022 WL 1651074 (E.D.N.Y. Apr. 26, 2022).  A court will waive the bond requirement where the plaintiff brings an action that promotes the public's interest, such as this action to enforce the dormant Commerce Clause. *Pharm. Soc. of State of New York, Inc. v. New York State Dep't of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995); *Hartford Courant Co., LLC v. Carroll*, 474 F. Supp. 3d 483, 508 (D. Conn. 2020); and *Libertarian Party of Connecticut v. Merrill*, No. 15-CV-1851 (JCH), 2016 WL 10405920, at *8 (D. Conn. Jan. 26, 2016).

The moving party's size and financial resources may also be considered in setting a reduced bond amount. *See, GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000); *Color Me House, Inc. v. Discovery Commc'ns, Inc.*, Case No. C12-5935-RJB, 2013 WL 1283806, *10 (March 27, 2013); and *BioPure Healing Prod., LLC v. WellNX Life Scis., Inc.*, No. C17-470-RSL, 2017 WL 4168279, at *1 (W.D. Wash. Sept. 20, 2017).

## IV.    PRELIMINARY RELIEF IS WARRANTED ON AN EXPEDITED BASIS

Plaintiffs properly bring this Application on an emergency basis rather than as a noticed motion. When the state court issued a TRO and preliminary injunction, it permitted dispensaries to open if they could prove they were fully licensed and prepared to open before the complaint was filed. Approximately 23 CAURD applicants were able to meet that standard and operate their dispensaries while the preliminary injunction was in place.

Now that the state court preliminary injunction has lifted, Defendants are aware that more litigation will be filed and they are rushing to issue Licenses and permit more dispensaries to open under the CAURD Application Program before another preliminary injunction issues.

Although the state court settlement agreement prohibits Defendants from processing additional CAURD applications, it does not prohibit Defendants from proceeding with the already-selected CAURD applicants. (Jensen Aff., Ex. 4, at p.7).   Defendant Wright said at a December 8, 2023 Cannabis Control Board Meeting that "[w]e remain hopeful as we look to the upcoming weeks and months. We anticipate licensees announcements of their grand openings, as we ask that you stay tuned to announcements from [Defendant Office of Cannabis Management] for dispensary openings near you."[2]   Similarly, Defendant Alexander stated at an Office of Cannabis Management town hall meeting on December 6, 2023, "[i]t is imperative that you get open as soon as possible.  We are here

---

[2] *See* publicly available video of hearing at 2:57 (available at: https://www.youtube.com/watch?v=rwQ9aHCiZTw).

to support you."[3]

Thus, Plaintiffs ask the Court to enjoin Defendants from issuing additional Licenses under the CAURD Application Program, as that would permit those businesses to open before Plaintiffs' businesses.  That would cause irreparable harm to Plaintiffs.  It would also violate Section 10(19) of the Cannabis Law, which provides that "the initial adult-use cannabis retail dispensary license application period shall be opened for ***all applicants at the same time***."  NY CANBS § 10(19) (emphasis added).

## V.   CONCLUSION

For the reasons set forth above, Plaintiffs ask this Court to issue a temporary restraining order to prevent Defendants from issuing any cannabis licenses under the unconstitutional Adult Use Application Program and the CAURD Application Program.

Dated: December 21, 2023

Respectfully submitted,

**JEFFREY M. JENSEN**

By:     /s/ Jeffrey M. Jensen
        Jeffrey M. Jensen, Esq.
        *Pro Hac Vice*
        New York Reg. No.: 5375704
        *Attorney for Plaintiffs – Lead Counsel*
        9903 Santa Monica Blvd. #890
        Beverly Hills, CA 90212
        (310) 909-7043
        Email: jeff@jensen2.com

---

[3] *See* publicly available video of town hall at 4:10 (available at: https://www.youtube.com/watch?v=NyHIy6SvaKM).