**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VARISCITE NY FOUR, LLC AND VARISCITE NY FIVE, LLC | Docket No. 23-1599 |
| Plaintiff, | **DECLARATION OF DEPUTY DIRECTOR OF DATA AND RESEARCH IN OPPOSITION TO PLAINTIFFS' REQUEST FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| v. | |
| NEW YORK STATE CANNABIS CONTROL BOARD; NEW YORK STATE OFFICE OF CANNABIS MANAGEMENT; TREMAINE WRIGHT; AND CHRIS ALEXANDER, | |
| Defendants. | |

Jodi Bryon, on the date noted below and pursuant to § 1746 of Title 28 of the United States Code, declares the following to be true and correct under the penalty of perjury under the laws of the United States of America:

1. I am currently employed by the New York State ("NYS") Office of Cannabis Management ("Office") and my position is Deputy Director of Data and Research. In this position, my duties and responsibilities include, but are not limited to, leading the OCM team in the development of adult-use cannabis applications and agency systems, a data warehouse, and agency analytics.

2. Prior to OCM, I worked in New York City and New York State government for 19 years, serving as Director of Performance Management and Analytics and the Director of Workforce Analytics at the NYC Department of Citywide Administrative Services, and as the Team Leader in the Housing, Economic, and Infrastructure Planning division at the NYC Department of City Planning. I have a baccalaureate and Master Degree in Urban Planning from SUNY Buffalo and a Master Degree of Quantitative Methods and Modeling from CUNY Baruch.

3. My statements herein are based on my personal knowledge, deriving from my position as Deputy Directory of Data and Research at the Office, and relevant materials consisting of the exhibits and authorities cited herein.

4. I submit this Declaration in support the Defendants' opposition to Plaintiffs' request for a Temporary Restraining Order and Preliminary Injunction.

Application Questions Regarding Community Disproportionately Impacted

5. Applicants that wish to apply for an adult-use retail dispensary license must complete an online application through an electronic platform known as New York Business Express.

6. If an applicant wants to receive extra priority, it must indicate on the application that one or more majority owners was a member of a community disproportionately impacted by the enforcement of cannabis prohibition ("CDI").

7. The application allows an applicant to provide an address, at which they resided, located in a community outside of New York State that an applicant intends to establish as a CDI. *See* Sample Screenshot of CDI address fields attached hereto as **Exhibit A**.

8. If the address that an applicant enters is located in New York, then the applicant is required to enter a New York county. However, no such requirement exists for a CDI address outside of New York. **An applicant is not required to enter a New York county when the state that is entered is Not New York**. *Id*. Plaintiffs' Exhibit 3 does not accurately represent the options available to an applicant on the application.

9. Further, the application requires an applicant to upload documents to establish that they were a member of such CDI for a certain period of time and to "check the type of proof being uploaded." *See* Sample Screenshot of Proof for CDI attached hereto as **Exhibit B**.

10. The list is comprised of nineteen (19) types of documents that an applicant can select as being uploaded. Seven of the nineteen types of documents refer to an example of a New York issued document. These are only examples which do not preclude analogous documents of the same type from another state from being used. This is consistent with the remaining twelve examples of documents having no reference to a particular state. Even if there was any confusion about uploading analogous documents, the last type of document on the list that an applicant can select from is "**Any other proof of residency** subject to Office approval" which Plaintiffs appear to conveniently ignore. *Id*.

11. Plaintiff Variscite NY Four, LLC ("Variscite Four") submitted an application including the social and economic equity portion of the application. *See* Recreated Version of Variscite Four NYBE Application ("Variscite Four Application") attached hereto as **Exhibit C**, pp 36-66.[1]

12. Variscite Four indicated that it was applying as extra priority. *Id*. p 48.

13. Variscite Four was able to enter addresses in Bellflower, California and Los Angeles, California as CDIs in which one of the owners resided. *See* Variscite Four Application, pp 40- 46.

14. Variscite Four was not required to choose a New York County when it entered the CDI addresses. *Id*.

15. Variscite Four checked "NYS Drivers License" as the type of proof for being in such CDI and uploaded an analogous California document. It also checked "Any other proof of

---

[1] Variscite Four and Variscite Five's applications have been recreated from the application itself to illustrate for the Court the process, and options, that were available to Plaintiffs' during the application process. The received applications for Variscite Four and Variscite Five are attached hereto as **Exhibits D and E** respectively.

3

residency subject to Office approval" and uploaded additional documents relating to such entered addresses. *Id*.

16. Plaintiff Variscite NY Five, LLC ("Variscite Five") submitted an application including the social and economic equity portion of the application. *See* Recreated Version of Variscite Five NYBE Application ("Variscite Five Application") attached hereto as **Exhibit F**, pp 31-79.

17. Variscite Five indicated that it was applying as extra priority. *Id*. p 43.

18. Variscite Five was able to enter addresses in Los Angeles, California as CDIs in which one of the owners resided. *See* Variscite Five Application, pp 36-41.

19. Variscite Five checked "NYS Non-Driver License" as the type of proof for being in such CDI and uploaded an analogous California document. It also checked "Any other proof of residency subject to Office approval" and uploaded additional documents relating to such entered addresses. *Id*.

20. The Office does not have a record of having received any questions, let alone a question specifically regarding CDI and the documents required for meeting such CDI, from any email address that is listed in the Variscite Four Application or Variscite Five Application.

Application Questions Regarding Marihuana-Related Conviction

21. If an applicant wants to receive extra priority, it must also indicate whether its owner was convicted of a marihuana-related offense prior to the effective date of the MRTA (March 31, 2021), or had a parent, guardian, child, spouse, or dependent, or was a dependent of an individual who, prior to March 31, 2021, was convicted of a marihuana-related offense.

22. The application requires an applicant to select an offense under a New York State law. *See* Variscite Four Application p 48; Variscite Five Application p 43.

23. No question on the application requires an applicant to indicate that the applicant resided in New York, not even for one day, during the time the applicant was arrested or convicted for the New York marihuana-related offense.

24. No question on the application requires an applicant to indicate that the applicant resided in New York in relation to establishing that it was a member of a CDI.

25. There is simply no question on the application that requires an applicant to indicate that the applicant resided in New York whatsoever.

Application Review Lottery for Application Window October 4 – December 18

26. The application window for all license types (retail, microbusiness, cultivator, distributor, etc.) and for all applicant types (non-priority, priority, and extra priority) opened on October 4, 2023. The application window for applicants seeking a retail dispensary license with proof of control over a proposed premises from which they intend to operate closed on November 17, 2023 ("November Applications").  The application window closed on December 18, 2023 for applicants who applied after November 17, 2023, or for a provisional license without proof of control over a premises ("December Applications").

27. On December 7, 2023, the Office randomly ordered the November Applications using the Pick 4 lottery numbers as a seed for a random number generator. Each application was assigned a number that will determine the order in which such application will be reviewed. *See* Transcript of Meeting of Cannabis Control Board on December 8, 2023, attached hereto as **Exhibit G**.[2]

28. The November Applications will be reviewed in the order they were assigned in the queue until the number of licenses that the Office intends to issue is reached, which is currently

---

[2] https://cannabis.ny.gov/system/files/documents/2023/12/ocm-december-2023-transcript.pdf

anticipated to be two hundred and fifty licenses. As such, the applications are not reviewed until after the lottery has been completed. Because there were more applications than the number of licenses the Office intended to issue for the November Applications, it is possible that not all applications will be reviewed before all licenses are issued. *See* General Licensing Application Frequently Asked Questions ("FAQs"), attached hereto as **Exhibit H**, Question 10.[3]

29.     The November Applications that indicated they were seeking extra priority were each counted three times in the random ordering process which increased the opportunity that such applications would have an opportunity to be reviewed. To receive extra priority an applicant need only indicate that they qualify for extra priority to obtain extra priority in the first instance. However, in the event an application is then selected and reviewed by the Board and it is determined that the applicant does not have the required convictions under New York law, they will be returned to the normal pool without the extra priority weighting.

30.     The Variscite Four Application and Variscite Five Application were submitted on December 18.

31.     The December Applications have not yet been queued.

32.     There were 2,853 December Applications submitted for a retail dispensary.

33.     The Office intends to issue up to 450 retail licenses from the December Applications.

34.     Based on the large number of December Applications submitted for a retail dispensary, and the small number of December Applications that indicated they were seeking extra priority, if the Office uses the same randomization and weighting process as it did for the

---

[3] https://cannabis.ny.gov/system/files/documents/2023/12/current-public-universal-app-faq-12-5.pdf

November Applications[4], Plaintiffs' applications will have only a slim chance of being selected for review. As such, they may not ever be reviewed, not because of any challenged criteria, but because of the results of the random lottery for reviews. It would be unjust to enjoin the review and issuance of all applications when it is not even clear that Plaintiffs' applications would be selected for review by the Office.

Dated: Albany, New York
        January 16, 2024

/s/ Jodi Bryon
Jodi Bryon

---

[4] Currently the Office anticipates using a system similar to that used for the November applications, though a modified process may be used.  That system though, would not materially increase Plaintiffs' chance of being selected.