UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

VARISCITE NY FOUR, LLC AND VARISCITE NY FIVE, LLC,

*Plaintiffs*,

v.

NEW YORK CANNABIS CONTROL BOARD; NEW YORK STATE OFFICE OF CANNABIS MANAGEMENT; JESSICA C. GARCIA; AND SUSAN FILBURN,

*Defendants.*

Civil Action No. 1:23-cv-01599 (ANM/PJE)

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION FOR**

**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Jeffrey M. Jensen, Esq. (*Pro Hac Vice*)
New York Reg. No.: 5375704
*Attorney for Plaintiffs – Lead Counsel*
9903 Santa Monica Blvd. #890
Beverly Hills, CA 90212
(310) 909-7043
Email: jeff@jeffreyjensen.com

1

**TABLE OF CONTENTS**

I.INTRODUCTION ...................................................................................................................4

II.STATEMENT OF FACTS.................................................................................................14

III.ANALYSIS ........................................................................................................................15

    A.    The Second Circuit Held that Plaintiffs Showed a Likelihood of Success on the Merits.............................................................................................................15

    B.    Plaintiffs Will Suffer Irreparable Harm Absent an Injunction..............................17

    C.    The Balance of Equities Favors Plaintiffs ....................................................19

    D.    An Injunction Is in the Public Interest ..........................................................22

    E.    The Court Should Not Require an Injunction Bond ...........................................23

IV.PRELIMINARY RELIEF IS WARRANTED ON AN EXPEDITED BASIS .............24

V.CONCLUSION ...................................................................................................................24

## TABLE OF AUTHORITIES

*AIM Int'l Trading, LLC v. Valcucine SpA*, 188 F. Supp. 2d 384 (S.D.N.Y. 2002) ............................ 15

*Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) ......... 17

Color Me House, Inc. v. Discovery Commc'ns, Inc., Case No. C12-5935-RJB, 2013 WL 1283806
    (March 27, 2013)................................................................................................................................ 24

*Finch v. Treto*, No. 22 C 1508, 2022 WL 2073572 (N.D. Ill. June 9, 2022).................................... 18

GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199 (9th Cir. 2000) .................................................. 23

*Gov't Emples. Ins. Co. v. Relief Med., P.C.*, 554 F. Supp. 3d 482 (E.D.N.Y. 2021)......................... 15

*Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630 (7th Cir. 2005) ....................................... 19

*Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 816 (E.D. Mich. 2021)............................................. 18

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)....................................................................... 17

*Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865 (7th Cir. 2009).............. 19

*Quezada v. BP Prods. N. Am., Inc.*, No. 06 CV 5378 (SJ), 2006 WL 3837720 (E.D.N.Y. Dec. 1,
    2006)................................................................................................................................................ 18

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991)...... 19

*Starlight Sugar, Inc. v. Soto*, 114 F.3d 330 (1st Cir. 1997) ........................................................... 19

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001) ............................. 19

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)................................................................ 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Plaintiffs Variscite NY Four, LLC and Variscite NY Five, LLC bring this Renewed Motion for Temporary Restraining Order and Preliminary Injunction to prevent Defendants New York State Cannabis Control Board (the "Board"); New York State Office of Cannabis Management ("OCM"); Jessica C. Garcia; and Susan Filburn (collectively, "Defendants") from issuing *any* adult use retail dispensary cannabis licenses ("Licenses") under the "November Pool" or the "December Pool" of the application program held from October 4, 2023 through December 18, 2023 (the "Adult Use Application Program") *including any and all Licenses issued after December 18, 2023*.

Plaintiffs have litigated this case with urgency. Defendants, however, have opposed every attempt by Plaintiffs to move this case forward.  Plaintiffs filed this lawsuit on December 18, 2023, *before the deadline to submit applications in the Adult Use Application Program*.  (Dkt. #1.)  On December 21, 2023, the Court granted lead counsel's application for admission pro hac vice.  (Dkt. #7.)  The next day, December 22, 2023, counsel served the Motion for TRO/PI on Defendants by personal service so Defendants would have plenty of time to review the papers and prepare their opposition before Plaintiff filed them.  (Dkt. #14.)

On December 28, 2023, Plaintiffs filed the Motion for TRO and PI.  (Dkts. #10-13.)  *When Plaintiffs filed the Motion for TRO and PI, Defendants had not even decided how many Licenses to issue, and they had not begun to review applications, much less issue any Licenses.*

On January 16, 2024, Defendants opposed Plaintiffs' Motion to TRO and PI.  Defendants also filed a Motion to Dismiss the case.  (Dkts. #25-30.)  On January 26, 2024, the Court held the hearing on Plaintiffs' Motion for TRO and PI.  (Dkt. #50.)  On February 2, 2024, the Court denied Plaintiffs' Motion for TRO and PI.  (Dkt. #36.)

On February 11, 2024, Plaintiffs filed a Notice of Appeal to the Second Circuit.  (Dkt. #38.)

4

*On February 16, 2024, two months after Plaintiffs filed this lawsuit and while the Order denying the PI was on appeal to the Second Circuit, Defendants began issuing Licenses under the Adult Use Application Program*.[1]

Notwithstanding that the Order denying the PI was on appeal, the District Court proceeded with Defendants' Motion to Dismiss that Defendants brought under the same arguments as their Opposition to the TRO and PI.  The parties briefed the Motion to Dismiss on February 14 and March 1, 2024. (Dkts. #42-45 and 49.)

*On March 25, 2024, Plaintiffs attempted to expedite the appeal at the Second Circuit because Defendants had begun issuing Licenses.*  Plaintiff filed with the Second Circuit an Emergency Motion to Expedite the Appeal.  (2nd Circ. Dkt. #21.1, Aff. Jensen, Ex. 1.)  Plaintiffs "request[ed] a decision on this motion for an expedited briefing schedule as soon as possible."  (*Id*.)  The Second Circuit allows the parties to propose their own deadlines up to 91 days, but Plaintiffs proposed a two-week deadline for their Opening Brief in line with their request to expedite the appeal.  (*Id*.; *see also* 2nd Cir. Docket #20.1, Aff. Jensen, Ex. 2.)

*Notwithstanding this serious, and ultimately successful, constitutional challenge to Defendants' Adult Use Application Program, Defendants opposed the expedited appeal schedule so they could continue issuing Licenses before the Second Circuit decided the issues*.  Defendants wrote, "defendants oppose any reduction of their time to file a response brief allowed by Local Rule 31.2(a)(1)(B). Plaintiffs' motion should be denied to the extent that it attempts to truncate defendants' time to prepare their brief because there is no need for the appeal to be expedited, and expediting the briefing schedule at this stage would be unduly burdensome for defendants."  (2nd Circ. Dkt. #23.1,

---

[1]    The Governor announced on February 16, 2024 that Defendants had begun issuing Adult Use Retail Licenses: https://www.governor.ny.gov/news/governor-hochul-announces-cannabis-control-board-approves-more-100-licenses-and-first.  The Court can take judicial notice of government websites.  *Boereau v. Scott*, 140 A.D.3d 687, 689 (2d. Dept. 2016).

Aff. Jensen, Ex. 3.)  Defendants also wrote, "defendants are entitled to select a deadline for their brief within the full 91-day window allowed by Local Rule 31.2(a)(1)(B)."  (*Id.*)

On April 3, 2024, the Second Circuit denied Plaintiffs' request to expedite the appeal.  (2nd Circ. Dkt. #24.1, Aff. Jensen, Ex. 4.)

*Plaintiffs continued using everything within their means to move this case forward quickly*. On April 8, 2024, notwithstanding that the Second Circuit denied Plaintiffs' Motion to Expedite the Appeal, Plaintiffs filed their Opening Brief within the two-week expedited briefing schedule they had proposed.  (2nd Circ. Dkt. #25.1, Aff. Jensen, Ex. 5.)

*Defendants continued using everything within their means to drag this case out.*  On April 9, 2024, Defendants requested the full 91 days to file their Responding Brief allowed by Local Rule 31.2(a)(1)(B) even though both sides had already briefed the issue, and the issue had already been addressed by multiple other courts.  (2nd Circ. Dkt. #30.1, Aff. Jensen, Ex. 6.)  The Second Circuit granted Defendants' proposed briefing schedule.  (2nd Circ. Dkt. #37.1, Aff. Jensen, Ex. 7.)  On July 8, 2024, Defendants filed their Responding Brief in the Second Circuit. (2nd Circ. Dkt. #38.1.) On July 29, 2024, Plaintiffs filed their Reply Brief.  (2nd Circ. Dkt. #44.1.)

On September 10, 2024, while the appeal was pending, the District Court issued an Order holding Defendants' Motion to Dismiss in abeyance until the Second Circuit ruled on the appeal.  (Dkt. #51.)

On December 19, 2024, the Second Circuit held oral argument on the appeal. (2nd Circ. Dkt. #54.1.)

On August 12, 2025, the Second Circuit issued an Opinion "vacat[ing] the district court's decision denying Variscite's motion for a preliminary injunction and remand[ing] for further proceedings consistent with this opinion."  *Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, 152 F.4th 47, 66 (2d Cir. 2025).  The Order concluded the dormant Commerce Clause applies to cannabis business licenses and Defendants' program likely violates it.

6

The Second Circuit concluded that Plaintiffs have standing to challenge both the November Pool and the December Pool of Defendants' Adult Use Application Program.  As to the November Pool, the Second Circuit wrote:

> Variscite does, however, have standing to challenge the fact that the November Pool will be processed before the December Pool. Variscite contends that the barrier to entering the November Pool-control over property in New York by an early deadline-- itself violated the dormant Commerce Clause. Variscite plausibly explains that this barrier was engineered to filter for former CAURD applicants, and thus for New Yorkers.  On this theory, Variscite's inability to apply in the November Pool was chiefly because Variscite is not owned by New Yorkers.  Variscite has standing to make that narrow argument.

*Id*. at 58.

***Even after the Second Circuit issued its Opinion, Defendants continued to delay this case.*** Defendants' counsel sought from Plaintiffs' counsel a 30-day extension of their time to petition the Second Circuit for rehearing en banc, notwithstanding that both sides had briefed the issue at the District Court and Circuit Court.  (Aff. Jensen, Ex. 8.)  Despite their reservations, as a professional courtesy, Plaintiffs consented to the extension "on the condition that the defendants do not use the additional delay against [Plaintiffs] in any way, including when it comes time to revisit the preliminary injunction in the district court." (*Id*.)

On August 26, 2024, the Second Circuit granted Defendants' Motion for a 30-day extension to petition for rehearing en banc.  (2nd Circ. Dkt. #70.1, Aff. Jensen, Ex. 9.)  On September 25, 2025, Defendants petitioned the Second Circuit for rehearing en banc.  (2nd Circ. Dkt. #72.1.)  On October 22, 2025, the Second Circuit denied Defendants' Petition for Rehearing En Banc.   (2nd Circ. Dkt. #73.1.)

On October 28, 2025, Benjamin Loefke filed a notice of appearance on behalf of Defendants in the District Court.  (Dkt. #54.)

***On October 30, 2025, six months ago, the Second Circuit issued the Mandate that restored the District Court's jurisdiction over the case.*** (Dkt. #55.)

On November 5, 2025, less than a week after the Second Circuit issued the Mandate, Plaintiffs filed a Motion for Leave to Conduct Limited Expedited Discovery.  (Dkt. #56.)  Plaintiffs noted that

7

"This case began nearly two years ago in December 2023, but discovery has not yet opened. The parties have not held the Rule 26(f) conference of counsel because the Court has not set the Rule 26(b) scheduling conference." (*Id*.) Plaintiffs noted their many attempts to expedite this case and Defendants' opposition to every one of those attempts to expedite. (*Id*.) Plaintiffs also explained:

> ***Defendants, while delaying this litigation, have been hurriedly issuing Licenses under the Adult-Use Application Program that Plaintiffs challenge and seek to enjoin.*** Defendants hope to moot Plaintiffs' request for an injunction by issuing all Licenses to the November batch before the Court rules. Defendants used this tactic in 2022 in the *Variscite One* case. In that case, the court enjoined three geographic areas of the state. While the motion for injunction was pending, Defendants hurriedly processed the License applications for other geographic areas in the hopes of mooting any future challenge by issuing the Licenses before another plaintiff could seek an injunction for those areas.

(*Id*. (emphasis added).)

***Plaintiffs further explained that although Defendants had not issued any Licenses when Plaintiffs filed this lawsuit, Defendants by that time had issued 517 Licenses.*** Plaintiff wrote: "Defendants send emails every week notifying the public of the newly opened adult-use retail dispensaries that week. Defendants received approximately 1,600 applications in the November Batch. To date, Defendants have licensed 517 Adult Use Dispensaries. (*Id*.)

Defendants did not respond to Plaintiffs' Motion for Leave to Conduct Limited Expedited Discovery, and the Court took no action on Plaintiffs' Motion.

> On December 8, Plaintiffs again wrote to the Court, stating:

> More than a month ago, on November 5, 2025, Plaintiff Variscite NY Four, LLC ("Plaintiff") filed a letter motion with this Court requesting expedited discovery. The typical response deadline for a letter motion in the Northen District is three days. Defendants have far exceeded their deadline to oppose Plaintiff's request. Under Local Rule 7.1(a)(3), "the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

(Dkt. #57, 58.)

Plaintiffs Letter also explained that Defendants continued to issue Licenses while they delayed activities in this case.  Plaintiffs wrote:

> In the letter motion, Plaintiff demonstrated an urgent need for discovery ahead of a renewed motion for preliminary injunction as to the November Batch. ***As of Plaintiff's November 5, 2025 letter motion, Defendants had issued 517 Adult Use Dispensary licenses. As of December 8, 2025, Defendants have issued 539 Adult Use Dispensary licenses.***  Defendants continue to hurriedly issue licenses to the November Batch applicants in an attempt to moot an injunction against that batch.

(*Id*. (emphasis added).)

On December 8, 2025, Defendants responded that "expedited discovery should be denied as premature." (Dkt. #60.)  ***Notably, Defendants considered discovery "premature" even though the case was two years old, the Second Circuit concluded Plaintiffs had a likelihood of success four months earlier, and the Second Circuit issued the Mandate more than a month earlier.***

On December 19, 2025, Magistrate Judge Evangelista held a conference with the parties regarding Plaintiffs' Motion for Leave to Conduct Limited Expedited Discovery.  Magistrate Judge Evangelista scheduled a follow-up conference for January 7, 2026 and ordered Defendants to provide an update on Discovery before then.

On January 6, 2026, Defendants filed their update, in which "Defendants oppose early discovery." (Dkt. #62.)  By then, two months had passed since the Second Circuit issued its mandate.

On January 7, 2026, Plaintiffs filed a motion to disqualify Benjamin Loefkey and the Attorney General's office as counsel in this case because Benjamin Loefkey was a clerk to Judge Sharpe during the Variscite NY One, Inc. case.  (Dkt. #63.)

On January 7, 2026, Magistrate Judge Evangelista held a conference on Plaintiffs' Motion for Expedited Discovery and took the Motion under submission.

On January 21, 2026, Defendants filed an Opposition to Plaintiffs' Motion to Disqualify Counsel.  Plaintiffs filed a Reply the next day on January 22. (Dkts. #65, 66.)

With all motions under submission—Plaintiffs' Motion for TRO and PI; Defendants' Motion to Dismiss; Plaintiffs' Motion for Limited Expedited Discovery; and Plaintiffs' Motion to Disqualify Counsel—no further activities occurred in the case for two months.

9

On March 25, 2026, a month ago, the Court denied Defendants' Motion to Dismiss.  (Dkt. 67.)

To date, the Court has not ruled on Plaintiffs' Motion to TRO and PI, as the Second Circuit vacated the Court's February 11, 2024 Order.  The Court has not scheduled the Rule 26(f) conference to open discovery.

***While Plaintiffs' Motion for TRO and PI has been pending for the last 2.5 years, Defendants have been issuing Licenses weekly.  New York has gone from 0 Licenses issued to 517 Licenses issued as of April 3, 2026.[2]  Notwithstanding that the Second Circuit issued its Opinion that the Adult Use Application Program violates the dormant Commerce Clause eight months ago on August 12, 2025, Defendants continue sending an email every Friday listing the new dispensaries that opened that week.***  (Aff. Jensen, Ex. 10.)

In light of the above, Plaintiffs ask the Court to enjoin Defendants from issuing ***any*** Licenses under the Adult Use Application Program, as Defendants had not issued any Licenses as of the date Plaintiffs filed the Complaint or the date Plaintiffs filed the Motion for TRO and PI.  This includes all 517 or more Licenses Defendants have issued to date.

Defendants issued Licenses for the last 2.5 years at their peril, and Plaintiffs' Motion for TRO and PI is analyzed as a prohibitory, rather than mandatory, injunction even as to already issued Licenses.  Judge Sharpe warned Defendants more than three years ago on November 10, 2022 that "Even if the licensing process had begun sometime after the filing of Variscite [One]'s complaint, the injunction would still be classified as prohibitory." *Variscite NY One, Inc. v. New York*, 640 F. Supp. 3d 232, n.5 (N.D.N.Y. 2022) (citing *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)).

---

[2]   Plaintiffs wrote in their December 8, 2025 letter to the Court that Defendants had issued 539 Adult Use Licenses, as noted above.  On April 3, 2026, however, Defendants issued a press release stating they have issued 517 Adult Use Licenses. *See* https://cannabis.ny.gov/system/files/documents/2026/04/april-ccb-press-release.pdf.  Upon review of Defendants' press release cited in Plaintiffs' December 8, 2025 letter to the Court, Plaintiffs believe 539 total adult use dispensaries had opened for sales (not just received licenses) as of that date, including both the Adult Use Application Program and the CAURD Application Program.

Moreover, even if Plaintiffs' request could somehow be viewed as a mandatory, rather than prohibitory, injunction as to the already issued licenses, Plaintiffs are still entitled to a TRO and PI cancelling those licenses. Judge Sharpe warned Defendants more than three years ago that Plaintiffs can obtain a mandatory injunction by showing a "clear likelihood of success" on the merits. Judge Sharpe wrote, "While Variscite [One] need only demonstrate a likelihood of success on the merits [because the requested PI is prohibitory], the court notes that Variscite has also demonstrated a clear likelihood of success on the merits and, thus, would satisfy the standard for a mandatory injunction for the same reasons that it has shown a likelihood of success." *Variscite NY One, Inc. v. New York*, 640 F. Supp. 3d 232, n.6 (N.D.N.Y. 2022). In this case, the Second Circuit already held that Plaintiffs demonstrated a likelihood of success. Thus, Plaintiffs have met the "clear likelihood of success" standard for a prohibitory injunction, even though Plaintiffs need only show the standard for a prohibitory injunction.

Furthermore, New York precedent supports enjoining already issued cannabis licenses. Defendants' CAURD Application Program period closed in September 2022. An ineligible applicant challenged the program under the dormant Commerce Clause in *Variscite One*. The *Variscite One* case settled, and Defendants issued cannabis dispensary licenses to CAURD applicants.

In August 2023, nearly a year after the CAURD Application Program period closed, after *Variscite One* settled, and after Defendants issued a significant number of licenses, a different group of excluded applicants challenged the CAURD Application Program. Those plaintiffs sued under the New York Constitution and sought a preliminary injunction. (Decision and Order (Aug. 18, 2023), *Fiore v. New York State Cannabis Control Board*, No. 907282-23 (Albany Supr. Ct.) (Aff. Jensen, Ex. 11).)

Defendants argued the court should deny the plaintiffs' motion for a preliminary injunction due to laches. The Supreme Court rejected that argument, noting Defendants chose to issue CAURD licenses despite knowing the CAURD program was subject to attack:

> ***This Court also notes that it was Defendant that decided to move forward and accelerate the CAURD program in the face of unresolved litigation and they were***

11

> ***undeniably on notice of the alleged constitutional defects at issue. Despite this notice, Defendants encouraged potential licensees to incur significant expenses in reliance on a program that Defendants knew was at issue in pending litigation. In this regard, there certainly is merit to the argument that Defendants created much of the very harm that they now assert in support of their arguments.***

(Decision and Order (Aug. 19, 2023) at 13, *Fiore v. New York State Cannabis Control Board*, No. 907282-23 (Albany Supr. Ct.) (Aff. Jensen, Ex. 11) (emphasis added).)

The Supreme Court further noted that it should issue a preliminary injunction to stop licensees from continuing to spend money on an unconstitutional program. The court wrote, "a denial of the injunction would be a tacit endorsement from this Court of further expenditures in reliance on a program that is potentially in legal jeopardy." (*Id*. at 13-14.)

Thus, the Supreme Court issued a preliminary injunction against all CAURD licenses, including already issued licenses. The court, however, permitted licensees to remain open if they had satisfied all requirements for opening their stores ***before the plaintiffs filed their complaint***, including approval of the dispensary site plan and local municipality approval. The preliminary injunction states:

> It is Hereby ORDERED, that pending further Order of this Court, Defendants are hereby enjoined from further processing, approving or investigating pending applications for CAURD licenses; and it is hereby
>
> ORDERED, that this injunction does not apply to any licensees who, prior to August 7, 2023, met all requirements for licensing, including but not limited to site plan approval from [Defendants] and, where applicable, from local municipalities; and it *is* further
>
> ORDERED that Defendants submit to this Court, on notice, by the close of business on August 22, 2023, a list of all licensees who have met all requirements for licensing; and it is further
>
> ORDERED, that any objections to those identified licensees being deemed exempt from this injunction shall be filed with the Court on or before August 24, 2023. Final detem1ination on any disputed objections shall be rendered by this Court following the next scheduled appearance on August 25, 2023; . . ."

(Decision and Order (Aug. 18, 2023) at 15, *Fiore v. New York State Cannabis Control Board*, No. 907282-23 (Albany Supr. Ct.) (Aff. Jensen, Ex. 11).)[3]

---

[3]   Notably, Defendants attempted to exempt from the preliminary injunction CAURD licensees who did not qualify under the Supreme Court's order. On August 23, Defendants submitted to the

Here, Defendants had not issued any Licenses when Plaintiffs filed the Complaint, and thus no basis exists to exclude any Licenses from the PI.

A similar situation arose recently in Rhode Island.  The plaintiffs brought dormant Commerce Clause challenges to the State's adult use cannabis license application program.  That program required applicants to lease or purchase real estate for the proposed dispensary in order to qualify for the lottery.  The program also required applicants to pay a nonrefundable application fee of $7,500.  Nevertheless, the District of Rhode Island enjoined Rhode Island's licensing program.  The court wrote, "***knowing the [Cannabis] Act was facing legal challenges in this Court, the [Rhode Island cannabis agency] continued forward with its plan to implement the Act and its licensing scheme. The resulting fall-out will be, to be blunt, self-inflicted.***"  *Jensen v. Rhode Island Cannabis Control Comm'n*, 2026 WL 1041974, at *12 (D.R.I. Apr. 9, 2026) (emphasis added).

Here, Plaintiffs brought this lawsuit and the Motion for TRO and PI before Defendants issued any Licenses.  Defendants began issuing Licenses while the case was on appeal to the Second Circuit, despite knowing the risk the Adult Use Application Program would be declared unconstitutional.  ***Defendants continued issuing Licenses for the last seven months even though the Second Circuit had already ruled that Defendants' program is unconstitutional***.

Thus, Plaintiffs ask the Court to enjoin Defendants from issuing ***any*** Licenses under the November Pool or December Pool of the Adult Use Application Program, including the already issued Licenses.  For applicants who ***opened*** their dispensaries before the Second Circuit issued its Order on the appeal on August 12, 2025, Plaintiffs propose permitting those dispensaries to remain open for 60

---

Supreme Court a list of 30 CAURD applicants who met all requirements for licensure before the plaintiffs filed the complaint.  (Decision and Order (Aug. 30, 2023) at 1, *Fiore v. New York State Cannabis Control Board*, No. 907282-23 (Albany Supr. Ct.) (Aff. Jensen, Ex. 12).)  The Supreme Court found that Respondents misrepresented the readiness of the 30 applicants.  (*Id*. at 2-3.)  Thus, the court declined to exempt any applicants from the preliminary injunction.  (*Id*. at 3.)  Instead, the court determined that for any applicant Respondents believed should be exempt from the preliminary injunction, Respondents would have to "certify, under oath and on an applicant-by-applicant and requirement-by-requirement basis" that the applicant had met the standard. (*Id*.)

days to sell existing inventory.  For applicants who opened their dispensaries after August 12, 2025, and knew or should have known their Licenses violated the United States Constitution, Plaintiffs propose permitting those dispensaries to remain open for 30 days to sell existing inventory.

## II.    STATEMENT OF FACTS

### A.    The Adult Use Application Program Favors New York Residents

Under N.Y. Comp. Codes R. & Regs. tit. 9 ("NYCRR") section 121.1(k) (Extra Priority), "(1) A person who demonstrates that they are an individual *from a community disproportionately impacted by the enforcement of cannabis prohibition* may receive extra priority if: (i) they have an income lower than eighty percent (80%) of the median income of the county in which the applicant resides; and (ii*) was convicted of a marihuana-related offense* prior to the effective date of the Marihuana Regulation and Taxation Act, or had a parent, guardian, child, spouse, or dependent, or was a dependent of an individual who, prior to the effective date of the Marihuana Regulation and Taxation Act, was convicted of a marihuana-related offense." 9 NYCRR 121.1(k) (emphasis added).

Under Section 121.1(d)(2), a person is from a community disproportionately impacted by the enforcement of cannabis prohibit if they lived in such a community for an aggregate of five of the first eighteen years of their life or an aggregate of seven years of their life. 9 NYCRR 121.1(d)(2).

### B.    Plaintiffs Satisfy All Application Requirements Except the Unconstitutional New York Preferences

Variscite Four applied for a License in the application program.  (Aff. Jensen ¶ 3.) Variscite Four satisfies every requirement for inclusion in the "Extra Priority" batch for application review, except the unconstitutional preferences for New York residents. (*Id*.) Variscite Four is 51% owned by an individual who was convicted of a cannabis crime under California law rather than New York law. (*Id*.) He has an income lower than 80% of the median income of Los Angeles County, where he resides. (*Id*.) He lived in a community disproportionately impacted by the enforcement of cannabis prohibition in California for more than seven years. (*Id*.)

Variscite Five applied for a License in the application program. (*Id*. ¶ 4.) Variscite Five satisfies every requirement for inclusion in the "Extra Priority" batch for application review, except

the unconstitutional preferences for New York residents. (*Id*.) Variscite Five is 51% owned by an individual who was convicted of a cannabis crime under California law rather than New York law. (*Id*.) He has an income lower than 80% of the median income of Los Angeles County, where he resides.  He lived in a community disproportionately impacted by the enforcement of cannabis prohibition in California for more than seven years. (*Id*.)

## III.    ANALYSIS

Courts apply the same standard for granting a temporary restraining order and a preliminary injunction.  *AIM Int'l Trading, LLC v. Valcucine SpA*, 188 F. Supp. 2d 384, 386 (S.D.N.Y. 2002).  The plaintiff must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm without a preliminary injunction; (3) the balance of equities favors the plaintiff; and (4) the injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *Gov't Emples. Ins. Co. v. Relief Med., P.C.*, 554 F. Supp. 3d 482, 498 (E.D.N.Y. 2021).

### A.    The Second Circuit Held that Plaintiffs Showed a Likelihood of Success on the Merits

The Second Circuit held that Plaintiffs demonstrated a likelihood of success on their claim Defendants' Adult Use Application Program violates the dormant Commerce Clause.  *Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, 152 F.4th 47, 65–66 (2d Cir. 2025).

The Second Circuit further held Plaintiffs have standing to challenge "the issuance of (a) December Pool licenses, based on purported unlawful ordering within the December Queue, and (b) November Pool licenses, insofar as an unlawful preference is accorded to the entire November Pool— but not the ordering within it."  *Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, 152 F.4th 47, 59 (2d Cir. 2025).

Due to Defendants' dormant Commerce Clause violations, Plaintiffs are unlikely to obtain Licenses.  Plaintiffs are harmed by the November Pool because Defendants admit they may award so many Licenses to November Pool applicants that there may be none left for December Pool applicants like Plaintiffs.  Plaintiffs are harmed by the December Pool because if any Licenses are left over for December Pool applicants, Plaintiffs are unlikely to receive them because Defendants denied Plaintiffs

"extra priority."

> The Second Circuit explained Plaintiffs' harms from the November Pool:

> In arguing that Variscite's challenge to the *December* Pool is unripe, New York asserts that it "does not know how many licenses will be available for retail dispensaries on the December Queue and will not know until it has a clearer idea of *how many licenses will be awarded to November Queue applicants* and how many more dispensaries the State's cannabis market can sustain." *Id.* at 26 (emphasis added). Thus, Variscite's claims concerning *December* licenses are said to be unripe precisely because New York may issue too many *November* licenses—that is, New York's improper award of up to nearly 1,800 November Pool licenses would reduce Variscite's odds of obtaining a December license.

*Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, 152 F.4th 47, 57 (2d Cir. 2025) (emphasis in original). Thus, Plaintiffs have standing to challenge both the November Pool and the December Pool.

Moreover, Plaintiffs have shown they satisfy all requirements for "extra priority" except the unconstitutional residency requirements. Variscite Four applied for a License in the application program. (Aff. Jensen ¶ 3.) Variscite Four is 51% owned by an individual who was convicted of a cannabis crime under California law rather than New York law. (*Id.*; *see also* Decl. Kinsey (Aff. Jensen, Ex. 13).) He has an income lower than 80% of the median income of Los Angeles County, where he resides. (*Id.*) He lived in a community disproportionately impacted by the enforcement of cannabis prohibition in California for more than seven years. (*Id.*) Variscite Four meets all eligibility requirements for "extra priority" in the Adult Use Application Program except that its majority owner was convicted of a cannabis offense under California law rather than New York law and he lived in a community disproportionately impacted by cannabis prohibition in California rather than New York. (*Id.*)

Variscite Five applied for a License in the application program. (*Id.* ¶ 4; *see also* Decl. Palmore (Aff. Jensen, Ex. 14).) Variscite Five is 51% owned by an individual who was convicted of a cannabis crime under California law rather than New York law. (*Id.*) He has an income lower than 80% of the median income of Los Angeles County, where he resides. He lived in a community disproportionately impacted by the enforcement of cannabis prohibition in California for more than seven years. (*Id.*)

16

Variscite Five meets all eligibility requirements for "extra priority" in the Adult Use Application Program except that its majority owner was convicted of a cannabis offense under California law rather than New York law and he lived in a community disproportionately impacted by cannabis prohibition in California rather than New York.  (*Id.*)

    **B.**    **Plaintiffs Will Suffer Irreparable Harm Absent an Injunction**

The District Court, in its original Order on Plaintiffs' Motion for TRO and PI, found the remaining injunction factors favored Defendants because Plaintiffs had not shown a likelihood of success on the merits.  The Second Circuit held that "The district court further erred by assessing the remaining preliminary injunction factors under the assumption that Variscite would not suffer a constitutional injury."  *Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, 152 F.4th 47, 65–66 (2d Cir. 2025).

Plaintiffs will multiple irreparable harms.  ***First***, Plaintiffs cannot obtain monetary damages instead of injunctive relief because of the Eleventh Amendment.

***Second***, "[i]n the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm."  *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 448 (D. Conn. 2020); see also *Gallagher v. N.Y. State Bd. of Elections*, 477 F. Supp. 3d 19, 41 (S.D.N.Y. 2020) ("Plaintiffs and Plaintiff-Intervenors have shown irreparable injury because they allege a violation of their constitutional rights in connection with election results that will soon be certified as final."); *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) ("[T]he constitutional violation alone, coupled with the damages incurred, can suffice to show irreparable harm."); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[T]here was no abuse of discretion in concluding that the Plaintiffs faced irreparable harm in the form of a deprivation of constitutional rights absent a preliminary injunction.").  Where a plaintiff's business is harmed by a constitutional violation (as will happen here because Plaintiff's business will not be allowed to open), the harm is irreparable even if the plaintiff's loss of business could be compensated with monetary damages.  *Am. Trucking Associations*, 559 F.3d at 1059.

***Third***, aside from the constitutional violation, Plaintiffs will suffer the irreparable harm of

17

being excluded from the New York storefront retail cannabis market unless the Court issues a preliminary injunction.  Defendants will issue only a limited number of storefront retail cannabis licenses.  (FAQ (Aff. Jensen, Ex. 5) at 2.)  Exclusion from the market is an irreparable harm.  *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 816 (E.D. Mich. 2021) ("[P]laintiff has demonstrated that she will suffer irreparable injury absent an injunction, as she would, at best, be significantly disadvantaged in applying for a recreational marijuana retail license (assuming fifty percent of the licenses are reserved for legacy applicants) and, at worst, be entirely eliminated from consideration for such a license (if all of the licenses are awarded to legacy applicants)."); *Finch v. Treto*, No. 22 C 1508, 2022 WL 2073572, at *16 (N.D. Ill. June 9, 2022) ("If the court declined to grant injunctive relief as to the 2021 lotteries, it would allow the Department to proceed with issuing the first 185 licenses. Once those 185 licenses are issued, Plaintiffs' chances of obtaining their own licenses will be statistically narrowed, as the total number of licenses is capped at 500 by statute. In short, the court concludes Plaintiffs have satisfied the irreparable-harm requirement."); *Jensen v. Rhode Island Cannabis Control Comm'n*, No. 24-CV-191-MRD-AEM, 2026 WL 1041974, at *10 (D.R.I. Apr. 9, 2026) ("Because there are a finite number of licenses and dispensaries, Plaintiffs will suffer the same harms as the plaintiff in *Northeast Patients Group* if they are not given the opportunity to enter the market at the same time as other applicants.").

***Fourth***, even if Plaintiffs could somehow later enter the market, the delay in entering the market causes irreparable harm.  All advantages to early entrants in the market, such as access to customers who have not developed loyalty to other business, will have been claimed.  See *NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913, at *11 (D. Me. Aug. 14, 2020) ("I agree that the unique context of this new market suggests that the timing of a ruling in the Plaintiffs' favor is particularly important. The Plaintiffs are not seeking to enter an established [cannabis] market, where the significance of any further delay of their participation is likely diminished. Rather, the Plaintiffs are seeking to be in the first wave of [cannabis] licensees as a new market launches and are hoping to attract customers who have not yet developed allegiances."); *Quezada v. BP Prods. N. Am., Inc.*, No. 06 CV 5378 (SJ), 2006 WL 3837720 (E.D.N.Y. Dec. 1, 2006)

(temporary inability to sell goods is irreparable harm of loss of goodwill); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."); *Starlight Sugar, Inc. v. Soto*, 114 F.3d 330, 332 (1st Cir. 1997) ("While it is true that injunctive relief is generally inappropriate where money damages can make a plaintiff whole, we have recognized that the loss of a unique or fleeting business opportunity can constitute irreparable injury."); *Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630, 632 (7th Cir. 2005) ("[I]t is precisely the difficulty of pinning down what business has been or will be lost that makes an injury 'irreparable.'"); *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 872–73 (7th Cir. 2009) ("The district court concluded that the harm to Pro's was irreparable because it was difficult to ascertain the specific amount of revenue being lost, and because damages might come too late to adequately compensate the plaintiff's business.").

## C.     The Balance of Equities Favors Plaintiffs

Plaintiffs brought this lawsuit and Motion for TRO and PI before Defendants processed any applications, much less issued any Licenses.  While Plaintiffs' Motion for TRO and PI has been pending for the last 2.5 years, Defendants have been issuing Licenses weekly.  New York has gone from 0 Licenses issued when Plaintiffs moved for a TRO and PI to 517 Licenses issued as of April 3, 2026.

Even worse, Defendants continued issuing Licenses after the Second Circuit issued its Opinion that the Adult Use Application Program violates the dormant Commerce Clause eight months ago on August 12, 2025.  Defendants continue sending an email every Friday listing the new dispensaries that opened that week.  (*See* most recent email, Aff. Jensen, Ex. 10.)

Defendants issued Licenses for the last 2.5 years at their peril, and Plaintiffs' Motion for TRO and PI is analyzed as a prohibitory, rather than mandatory, injunction even as to already issued Licenses.  Judge Sharpe warned Defendants more than three years ago on November 10, 2022 that

19

"Even if the licensing process had begun sometime after the filing of Variscite [One]'s complaint, the injunction would still be classified as prohibitory." *Variscite NY One, Inc. v. New York*, 640 F. Supp. 3d 232, n.5 (N.D.N.Y. 2022) (citing *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)).

Moreover, even if Plaintiffs' request could somehow be viewed as a mandatory, rather than prohibitory, injunction as to the already issued licenses, Plaintiffs are still entitled to a TRO and PI. Judge Sharpe warned Defendants more than three years ago that the courts will grant a mandatory injunction if the plaintiff showed a "clear likelihood of success" on the merits.  Judge Sharpe wrote, "While Variscite [One] need only demonstrate a likelihood of success on the merits [because the requested PI is prohibitory], the court notes that Variscite has also demonstrated a clear likelihood of success on the merits and, thus, would satisfy the standard for a mandatory injunction for the same reasons that it has shown a likelihood of success." *Variscite NY One, Inc. v. New York*, 640 F. Supp. 3d 232, n.6 (N.D.N.Y. 2022).  In this case, the Second Circuit already held that Plaintiffs demonstrated a likelihood of success.  Thus, Plaintiffs have met the standard for a prohibitory injunction, even though Plaintiffs need only show the standard for a prohibitory injunction.

Furthermore, New York precedent supports enjoining already issued cannabis licenses. Defendants' CAURD Application Program period closed in September 2022.  An ineligible applicant challenged the program under the dormant Commerce Clause in *Variscite One*.   The *Variscite One* case settled, and Defendants issued cannabis dispensary licenses to CAURD applicants.

In August 2023, nearly a year after the CAURD Application Program period closed, after *Variscite One* settled, and after Defendants issued a significant number of licenses, a different group of excluded applicants challenged the CAURD Application Program.  Those plaintiffs sued under the New York Constitution and sought a preliminary injunction.  (Decision and Order (Aug. 18, 2023), *Fiore v. New York State Cannabis Control Board*, No. 907282-23 (Albany Supr. Ct.) (Aff. Jensen, Ex. 11).)

Defendants argued the court should deny the plaintiffs' motion for a preliminary injunction due to laches.  The Supreme Court rejected that argument, noting Defendants chose to issue CAURD licenses despite knowing the CAURD program was subject to attack:

> ***This Court also notes that it was Defendant that decided to move forward and accelerate the CAURD program in the face of unresolved litigation and they were undeniably on notice of the alleged constitutional defects at issue. Despite this notice, Defendants encouraged potential licensees to incur significant expenses in reliance on a program that Defendants knew was at issue in pending litigation. In this regard, there certainly is merit to the argument that Defendants created much of the very harm that they now assert in support of their arguments.***

(Decision and Order (Aug. 19, 2023) at 13, *Fiore v. New York State Cannabis Control Board*, No. 907282-23 (Albany Supr. Ct.) (Aff. Jensen, Ex. 11) (emphasis added).)

The Supreme Court further noted that it should issue a preliminary injunction to stop licensees from continuing to spend money on an unconstitutional program.  The court wrote, "a denial of the injunction would be a tacit endorsement from this Court of further expenditures in reliance on a program that is potentially in legal jeopardy." (*Id*. at 13-14.)

Thus, the Supreme Court issued a preliminary injunction against all CAURD licenses, including already issued licenses.  The court, however, permitted licensees to remain open if they had satisfied all requirements for opening their stores ***before the plaintiffs filed their complaint***, including approval of the dispensary site plan and local municipality approval.  The preliminary injunction states:

> It is Hereby ORDERED, that pending further Order of this Court, Defendants are hereby enjoined from further processing, approving or investigating pending applications for CAURD licenses; and it is hereby
>
> ORDERED, that this injunction does not apply to any licensees who, prior to August 7, 2023, met all requirements for licensing, including but not limited to site plan approval from [Defendants] and, where applicable, from local municipalities; and it *is* further
>
> ORDERED that Defendants submit to this Court, on notice, by the close of business on August 22, 2023, a list of all licensees who have met all requirements for licensing; and it is further
>
> ORDERED, that any objections to those identified licensees being deemed exempt from this injunction shall be filed with the Court on or before August 24, 2023. Final detem1ination on any disputed objections shall be rendered by this Court following the next scheduled appearance on August 25, 2023; . . ."

21

(Decision and Order (Aug. 18, 2023) at 15, *Fiore v. New York State Cannabis Control Board*, No. 907282-23 (Albany Supr. Ct.) (Aff. Jensen, Ex. 11)).)

Here, Defendants had not issued any Licenses when Plaintiffs filed the Complaint, and thus no basis exists to exclude any Licenses from the PI.

A similar situation arose recently in Rhode Island. The plaintiffs brought dormant Commerce Clause challenges to the State's adult use cannabis license application program. That program required applicants to lease or purchase real estate for the proposed dispensary in order to qualify for the lottery. The program also required applicants to pay a nonrefundable application fee of $7,500. Nevertheless, the District of Rhode Island enjoined Rhode Island's licensing program. The court wrote, "***knowing the [Cannabis] Act was facing legal challenges in this Court, the [Rhode Island cannabis agency] continued forward with its plan to implement the Act and its licensing scheme. The resulting fall-out will be, to be blunt, self-inflicted.***" *Jensen v. Rhode Island Cannabis Control Comm'n*, 2026 WL 1041974, at *12 (D.R.I. Apr. 9, 2026) (emphasis added).

Moreover, applicants were aware from prior litigation that Defendants' unconstitutional program is vulnerable to challenges. News sources published articles as far back as December 5, 2023 regarding CAURD applicants titled *Pot Dispensaries–Wary of Another Lawsuit–Rush to Open in Buffalo* (Article (Jensen, Ex. 15)) and *I'm Operating Under the Assumption that Somebody Is Filing Another Lawsuit Right Now*. (Article (Jensen, Ex. 16)). Thus, applicants were aware of the danger of investing money in Licenses issued under an unconstitutional program.

Furthermore, the Court can mitigate harm to License recipients who opened their dispensaries. For applicants who ***opened*** their dispensaries before the Second Circuit issued its Order on the appeal on August 12, 2025, Plaintiffs propose permitting those dispensaries to remain open for 60 days to sell existing inventory. For applicants who opened their dispensaries after August 12, 2025, and knew or should have known their Licenses violated the United States Constitution, Plaintiffs propose permitting those dispensaries to remain open for 30 days to sell existing inventory.

**D.      An Injunction Is in the Public Interest**

"[T]he public interest is best served by enjoining the enforcement of [a cannabis licensing]

22

ordinance that is likely unconstitutional." *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 816 (E.D. Mich. 2021).

The public interest is further served by protection of interstate participation in a cannabis market. *See Toigo*, 549 F. Supp. 3d at 996 ("The public interest is best served by the protection of [an applicant's] constitutional right to fully participate in the medical marijuana business in Missouri on the same footing as a Missouri resident, a right that is likely being violated by the State's durational residency requirement.").

The public has options to buy adult use cannabis other than through the Adult Use Application Program. The existing medical marijuana providers ("Registered Organizations") have been permitted to convert to both medical and adult use cannabis dispensaries. Hundreds of CAURD applicants have also opened to sell adult use cannabis.

### E.    The Court Should Not Require an Injunction Bond

The Court should not require an injunction bond. Plaintiffs are owned entirely by three individuals, two of whom are a low-income individuals as required by Defendants' Adult Use Application Program. (Aff. Jensen ¶¶ 3, 4.) This litigation, which seeks to vindicate Plaintiffs' constitutional rights, is being funded entirely by Plaintiffs' minority owner. The Court should not require Plaintiffs to post a bond.

A district court has the discretion to determine that no injunction bond is required. *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004); *JTH Tax LLC v. Kukla*, No. 22-cv-01542 (JS) (JMW), 2022 WL 1651074 (E.D.N.Y. Apr. 26, 2022). A court will waive the bond requirement where the plaintiff brings an action that promotes the public's interest, such as this action to enforce the dormant Commerce Clause. *Pharm. Soc. of State of New York, Inc. v. New York State Dep't of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995); *Hartford Courant Co., LLC v. Carroll*, 474 F. Supp. 3d 483, 508 (D. Conn. 2020); *Libertarian Party of Connecticut v. Merrill*, No. 15-CV-1851 (JCH), 2016 WL 10405920, at *8 (D. Conn. Jan. 26, 2016).

The moving party's size and financial resources may also be considered in setting a reduced bond amount. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000); *Color Me*

*House, Inc. v. Discovery Commc'ns, Inc.*, Case No. C12-5935-RJB, 2013 WL 1283806, *10 (March 27, 2013); *BioPure Healing Prod., LLC v. WellNX Life Scis., Inc.*, No. C17-470-RSL, 2017 WL 4168279, at *1 (W.D. Wash. Sept. 20, 2017).

## IV.    PRELIMINARY RELIEF IS WARRANTED ON AN EXPEDITED BASIS

Plaintiffs properly bring this Motion on an emergency basis rather than as a noticed motion. The Second Circuit vacated the Court's Order on Plaintiffs' Motion for TRO and PI eight months ago. The District Court denied Defendants' Motion to Dismiss a month ago.  The Court has not, however, ruled on Plaintiffs' Motion for TRO and PI.  All the while, Defendants are hurriedly issuing Licenses.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs ask this Court to issue a temporary restraining order and preliminary injunction to prevent Defendants from issuing any cannabis licenses under the unconstitutional Adult Use Application Program as to both the November Pool and the December Pool, including any Licenses already issued.  For applicants who *opened* their dispensaries before the Second Circuit issued its Order on the appeal on August 12, 2025, Plaintiffs propose permitting those dispensaries to remain open for 60 days to sell existing inventory.  For applicants who opened their dispensaries after August 12, 2025, and knew or should have known their Licenses violated the United States Constitution, Plaintiffs propose permitting those dispensaries to remain open for 30 days to sell existing inventory.

Dated: April 29, 2026

Respectfully submitted,

**JEFFREY M. JENSEN**

By:    */s/ Jeffrey M. Jensen*
Jeffrey M. Jensen, Esq.
*Pro Hac Vice*
New York Reg. No.: 5375704
*Attorney for Plaintiffs – Lead Counsel*
9903 Santa Monica Blvd. #890
Beverly Hills, CA 90212
(310) 909-7043

24

Email: jeff@jensen2.com

**HACKER MURPHY, LLP**

By:   /s/ Thomas J. Higgs
Thomas J. Higgs, Esq.
Bar Roll No.: 106047
*Attorneys for Plaintiff – Local Counsel*
28 Second Street
Troy, NY 12180
(518) 274-5820
Email: thiggs@hackermurphy.com