UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

VARISCITE NY FOUR, LLC AND VARISCITE NY FIVE, LLC,

*Plaintiffs*,

-against-

NEW YORK STATE CANNABIS CONTROL BOARD; NEW YORK STATE OFFICE OF CANNABIS MANAGEMENT; TREMAINE WRIGHT; and CHRIS ALEXANDER,

*Defendants*.

1:23-CV-1599

(AMN/PJE)

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224

Benjamin Loefke
Special Litigation Counsel
Bar Roll No. 516796
Telephone:  (518) 776-2739
Fax:  (518) 915-7738 (Not for service of papers)

Date: May 5, 2026

**Table of Contents**

PRELIMINARY STATEMENT ............................................................................... 1

      BACKGROUND ........................................................................................ 3

           A.          Statutory and Regulatory Framework of the Cannabis Law ........... 3

           B.          The Board Opens Three Licensing Application Windows To Effectuate the Cannabis Law ................................................................ 4

           C.          The Board and OCM Order and Prioritize Applications in the November and December Queues ................................................... 5

           D.          Plaintiffs Apply for Adult Use Retail Dispensary Licenses ........... 6

           E.          The Current State of the Cannabis Industry in New York ............. 7

           F.          The Second Circuit's Decision on the Dormant Commerce Clause And Viability Of Preliminary Injunctive Relief ......................................... 7

STANDARD OF REVIEW .................................................................................. 9

ARGUMENT ...................................................................................................... 10

    I.      Preliminary Relief Related to the November Queue Claim Is Not Warranted ................................................................................................. 10

           A.          The Second Circuit Held that Plaintiffs Cannot Show Likelihood of Success on the Merits of the November Queue Claim .................. 10

           B.          The Circuit Holding Is Fatal to Claims of Irreparable Harm on the November Queue Claim .............................................................. 11

           C.          Any Preliminary Relief on the November Queue Claim Is Against the Public Interest ................................................................... 12

           D.          Plaintiffs Proposed Relief Related to the November Queue Goes Beyond the Bounds of Rule 65(d) ............................................. 13

    II.     Preliminary Relief Related To The December Queue Claim Is Unnecessary .............................................................................................. 14

CONCLUSION .................................................................................................... 16

## Table of Authorities

**Cases**                                                                                                   **Page(s)**

*A.H. by & through Hester v. French*,
  985 F.3d 165 (2d Cir. 2021)............................................................................................... 9-10

*AFA Dispensing Grp. B.V. v. Anheuser–Busch, Inc.*,
  740 F. Supp. 2d 465 (S.D.N.Y. 2010)....................................................................................9

*Antonyuk v Hochul*,
  635 F. Supp. 3d 111 (N.D.N.Y. 2022)....................................................................................9

*Finch v. Treto*,
  82 F.4th 572 (7th Cir. 2023) ...............................................................................................12

*Havens v. James*,
  76 F.4th 103 (2d Cir. 2023) ........................................................................................... 13-14

*L&M Bus Corp. v. Bd. of Educ. of the City Sch. Dist. N.Y.*,
  2018 WL 2390125 (E.D.N.Y. May 25, 2018) .........................................................................9

*N.L.R.B. v. Express Pub. Co.*,
  312 U.S. 426 (1941)............................................................................................................15

*New York v. Actavis PLC*,
  787 F.3d 638 (2d Cir. 2015)..................................................................................................9

*New York v. Shinnecock Indian Nation*,
  560 F. Supp. 2d 186 (E.D.N.Y. 2008) .................................................................................16

*Nken v. Holder*,
  556 U.S. 418 (2009)........................................................................................................9, 12

*NML Capital Ltd. v. Republic of Argentina*,
  699 F.3d 246 (2d Cir. 2012)................................................................................................12

*Organic Blooms, LLC v. N.Y. State Cannabis Control Bd.*,
  Index No. 904497-24 (N.Y. Sup., Albany County 2024).........................................................7

*Pike v. Bruce Church, Inc.*,
  397 U.S. 137 (1970)............................................................................................................11

*Rowe v. N.Y. State Division of Budget*,
  No. 1:11-CV-1150, 2012 WL 4092856 (N.D.N.Y. Sept. 17, 2012)................................. 15-16

*Town of Southold v. Town of E. Hampton*,
  477 F.3d 38 (2d Cir. 2007)..................................................................................................11

*Variscite Four, LLC v. New York State Cannabis Control Board*,
    152 F.4th 47 (2d Cir. 2025) ....................................................................................2, 8-12, 14-15

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008)......................................................................................................................9

## Statutes

N.Y. Cannabis Law
    §§ 3, 61-89 ...............................................................................................................................3
    §§ 7-11 .....................................................................................................................................3
    § 10(9).......................................................................................................................................5
    § 10(16).....................................................................................................................................3
    § 10(19).....................................................................................................................................5
    § 13(1).......................................................................................................................................3
    § 13(2).......................................................................................................................................3
    § 87......................................................................................................................................... 4-5

## Regulations

9 NYCRR
    116.4(a)(2)(i)............................................................................................................................4

9 NYCRR
    part 121 ....................................................................................................................................5

## Rules

Fed. R. Civ. P. 25(d) .......................................................................................................................1

Rule 65(d) ......................................................................................................................................13

Defendants New York State Cannabis Control Board, New York State Office of Cannabis Management, Jessica Garcia in her official capacity as Chair of the Cannabis Control Board, and John Kagia, in his official capacity as Executive Director of the New York Office of Cannabis Management (collectively, "Defendants"),[1] respectfully submit this memorandum of law, with the accompanying Declaration of Patrick McKeage, dated May 5, 2026, along with its attached exhibits, and the prior filed Declarations of Jodi Bryon (Dkt. No. 26), Damian Fagon (Dkt. No. 27), John Kagia (Dkt. No. 28), and Patrick McKeage (Dkt. No. 29), all dated January 16, 2024, and their attached exhibits, in opposition to Plaintiffs' renewed motion for a temporary restraining order and preliminary injunction.

## PRELIMINARY STATEMENT

After the Second Circuit's decision and mandate issued in this case, Plaintiffs renewed their earlier motion to this Court for preliminary relief with respect to New York State's cannabis dispensary licenses issuance practices. *See* Dkt. 68. However, Plaintiffs now seek both to enjoin the issuance of further cannabis dispensary licenses by the Board and to claw-back all existing dispensary licenses—more than 600 operating businesses—and have those businesses cease operation in 30 to 60 days. *See* Dkt. 68-1. Plaintiffs do not present any meaningfully new evidence to support their renewed application, and instead rely on the same record that existed before the Second Circuit. Dkt. 70. Plaintiffs' motion relies heavily on the Second Circuit's decision in this case, but Plaintiffs get the holding and import of that decision completely wrong.

Rather than permitting Plaintiffs to broadly challenge the State's licensing system, the Second Circuit's decision left them with only two narrow claims: (1) to challenge the processing

---

[1] Jessica Garcia and John Kagia are the current Chair of the Cannabis Control Board and Executive Director of the Office of Cannabis Management, respectively, and are automatically substituted for the former holders of those positions originally named as defendants in their official capacity in the Complaint. *See* Fed. R. Civ. P. 25(d).

1

of applications in what is known as the "November Queue" as a whole before turning to the applications in the "Retail December Queue," which the Circuit held was *not* likely to succeed, and (2) to challenge the internal ordering of the "Retail December Queue" as applied to those with out-of-state marijuana convictions. *See Variscite Four, LLC v. New York State Cannabis Control Board*,152 F.4th 47, 58-59 (2d Cir. 2025). Indeed, the Second Circuit's decision provides clear directives regarding the preliminary relief available to Plaintiffs, and their proposed relief is utterly at odds with those directives.

*First*, the Court should deny preliminary relief related to Plaintiffs' "November Queue" claim because the Circuit expressly found that Plaintiffs failed to show likelihood of success on that claim. *See id.* at 65. Without likelihood of success on their constitutional analysis, Plaintiffs cannot show an irreparable constitutional injury. *See id.* at 60. Thus, there is no reason to disturb the Circuit's assessment of Plaintiffs' "November Queue" claim, especially considering that Plaintiffs ask this Court to ignore the equities and public interest, and shutter hundreds of going businesses around the State.

*Second*, the Court should deny preliminary relief on Plaintiffs' "Retail December Queue" claim because Plaintiffs have already effectively received that relief. When the Retail December Queue was ordered, Defendants accorded Plaintiffs three randomly assigned queue numbers, establishing Plaintiffs' order of review. This is the same number of randomly assigned queue numbers provided to similarly situated applicants with New York State marijuana convictions eligible for extra priority. Thus, Plaintiffs are being treated exactly like any other applicant entitled to extra priority, and will continue to be so treated. To receive any additional relief would not place Plaintiffs on equal footing with other applicants, but instead, improperly accord them greater

priority than anyone else. Thus, there is no need for this Court to grant relief on the "Retail December Queue" claim because Plaintiffs already have it.

In sum, the Court should deny Plaintiffs' motion in its entirety.

## BACKGROUND

### A.    Statutory and Regulatory Framework of the Cannabis Law

In 2021, the New York Legislature passed the Marihuana Regulation and Taxation Act, which codified New York's Cannabis Law. The Cannabis Law legalizes adult-use cannabis and regulates the growing, processing, distribution, and sale of cannabis within the State. N.Y. Cannabis Law §§ 3, 61-89. Article II of the Cannabis Law establishes the Cannabis Control Board (the "Board") and Office of Cannabis Management ("OCM"), which are responsible for implementing and enforcing the Cannabis Law within the State. N.Y. Cannabis Law §§ 7-11.

The Cannabis Law vests the Board with broad authority to "perform such acts, prescribe such forms and propose such rules, regulations and orders as it may deem necessary or proper to fully effectuate the provisions" of the Cannabis Law. N.Y. Cannabis Law § 13(1); *see also id*. § 10(16) (authorizing Board to "draft and provide for public comment and issue regulations, declaratory rulings, guidance and industry advisories" without limitation). The Cannabis Law authorizes the Board to "promulgate any and all necessary rules and regulations governing the cultivation, manufacture, processing, transportation, distribution, testing, delivery, and sale of . . . adult-use cannabis." N.Y. Cannabis Law § 13(2). Among the Board's areas of authority, the Cannabis Law vests the Board with discretion to promulgate "any and all necessary rules and regulations governing . . . the *licensing* and/or permitting of adult-use cannabis cultivators, processors, cooperatives, microbusiness, distributors, laboratories, and retailers." N.Y. Cannabis Law § 13(2) (emphasis added).

3

The Cannabis Law also contains explicit restorative justice and social equity goals. *See* N.Y. Cannabis Law § 87. The Board is required to create a "social and economic equity plan" that "prioritiz[es] consideration of applications by applicants who are from communities disproportionately impacted by the enforcement of cannabis prohibition or who qualify as a minority or women-owned business, distressed farmers, or service-disabled veterans." *Id.* § 87(1). The Board is also required to provide "extra priority" to "member[s] of a community disproportionately impacted by the enforcement of cannabis prohibitions" that have "an income lower than 80% of the median income of the county in which [they] reside[], and either "was convicted of a marihuana-related offense" or "had a parent, guardian, child, spouse, or dependent, or was a dependent of an individual who . . . was convicted of a marihuana-related offense" prior to the effective date of the Cannabis Law. *Id.* § 87(3).

### B. The Board Opens 87Licensing Application Windows To Effectuate the Cannabis Law

To effectuate its mandate to create a cannabis market and industry in New York State, the Board opened different application windows for various types of applicants. Decl. of Patrick McKeage, dated May 5, 2026 ("McKeage Decl.") ¶ 9. The Board opened the first window for adult-use conditional cultivator license applications from March 2022 through June 2022 (the "First AU Window") and the second window for adult-use conditional processor license applications from June 2022 through August 2022 (the "Second AU Window"). *Id.* The Board opened the next window for retail applications from August 25, 2022 through September 26, 2022. *Id.* During this application window, OCM accepted applications for Conditional Adult-Use Retail Dispensary ("CAURD") licenses (the "Third AU Window"). *Id.* The only applicants eligible to apply for licensure during the Third AU Window were those who met certain criteria, *see* 9 NYCRR 116.4(a)(2)(i) (requiring that the applicant include at least one "justice-involved

individual"), and sought a retail dispensary license. *Id.* ¶ 10. The fourth application window for all types of adult-use applicants (extra priority, priority, and non-priority) for all types of license types, *e.g.*, retail dispensary, cultivator, processor, etc. opened on October 4, 2023 and closed on December 18, 2023 ("The Fourth AU Window"). McKeage Decl. ¶ 11; Byron Decl. ¶ 26.

Within the Fourth AU Window, pursuant to its authority under Cannabis Law §§ 10(9) and 10(19), the Board created two application periods specific to adult-use retail dispensary and microbusiness licenses. McKeage Decl. ¶ 12. The application period for applicants seeking a retail license with proof of control over a proposed premises from which they intend to operate closed on November 17, 2023, at 5:00 PM ("November Applications"). The application period for applicants who applied after November 17, 2023, or for a provisional license without proof of control over a premises closed on December 18, 2023 ("December Applications"). *Id.* ¶ 13.

To remain in the November Applications, an applicant had to provide proof of control over the location at which the licensed activities were to take place. *Id.; see* also Bryon Decl. ¶ 26. Any applicant submitting an application without the requisite proof of control was added to the next application period or the December Applications. McKeage Decl. ¶ 13; Bryon Decl. ¶ 26.

### C.    The Board and OCM Order and Prioritize Applications in the November and December Queues

To comply with the mandates found in Section 87 of the Cannabis Law, requiring a social and economic equity plan and offering of priority and extra priority to certain applicants, the Board promulgated various regulations defining the requirements for such applicants, including providing those satisfying Cannabis Law § 87(3) with extra priority in the application process. *See, e.g.*, 9 NYCRR part 121; *see also* McKeage Decl. ¶ 14.

To receive extra priority treatment in the ordering process, an applicant needed only to indicate that they qualify for extra priority in their licensure application. McKeage Decl. ¶ 15;

Byron Decl. ¶ 29. However, in the event an application is then reviewed and it is determined that the applicant does not have the required convictions under New York law, the application is returned to the normal pool without the extra priority weighting. McKeage Decl. ¶ 15; Byron Decl. ¶ 29.

Consistent with the Board's regulations, on December 7, 2023, the Office used a computer program to randomly sequence the November Applications to create the order in which the Office reviews the applications ("the November Queue"). McKeage Decl. ¶ 16; Byron Decl. ¶ 29. On January 30, 2024, the Office used the same computer program to randomly assign numbers to the December Applications which placed them in a queue that determines the order in which the Office reviews applications, creating different applications queues for the different license types, (relevant here the "Retail December Queue," "Cultivator December Queue," collectively the "December Queues"). McKeage Decl. ¶ 17. Applicants in the November and December Queues who indicated in their applications that they were eligible for extra priority were given three random numbers rather than the one random number given to non-priority applicants and the two given to priority applicants. *Id.* ¶ 18; Byron Decl. ¶ 29.

### D. Plaintiffs Apply for Adult Use Retail Dispensary Licenses

On November 30, 2023, Plaintiffs Variscite NY Four, LLC ("Variscite Four") and Variscite NY Five, LLC, ("Variscite Five," together the "Plaintiffs") were registered as business entities with the New York Department of State. McKeage Decl ¶ 19. On December 18, 2023, Plaintiffs each applied for adult retail dispensary license and each requested extra priority. *Id.* ¶ 20; Byron Decl. ¶¶ 11, 12, 16, 17; Exs. C, F. Given Plaintiffs applied after November 17, 2023, and, in any event, applied without submitting proof of control of a location, Plaintiffs were allocated to the Retail December Queue. McKeage Decl. ¶ 21; *see also* Byron Decl. ¶ 30, Exs. C, F. When OCM randomly ordered and prioritized the December Queues, in an abundance of caution

6

given this ongoing litigation, it treated Plaintiffs as eligible for extra priority and allocated each entity three random numbers, treating them like all other similarly situated applicants with extra priority. McKeage Decl. ¶ 22. OCM shall continue to treat Plaintiffs in the same manner as similarly situated applicants with in-state convictions, if and when OCM reviews Plaintiffs' applications. *See id.*

### E.      The Current State of the Cannabis Industry in New York

Since this case was filed over two years ago on December 18, 2023, the New York State cannabis industry has expanded, going from a handful of operating dispensaries around the State to over 2200 licensees, including 650 licensed and operational retail dispensaries. *Id.* ¶ 23. The industry has generated more than $3.2 Billion in retail sales, and over $400 million in tax revenue to the State. *Id.* ¶ 24. At this time, the Board and OCM are still processing applications for dispensaries in the November Queue.[2] *Id.* ¶ 25. OCM has begun reviewing cultivator applications in the Cultivator December Queue to address anticipated shortfalls in supply. McKeage Decl. ¶ 25. The Retail December Queue contains 2,748 unique retail dispensary applications. *Id.*

### F.      The Second Circuit's Decision on the Dormant Commerce Clause And Viability Of Preliminary Injunctive Relief

On December 28, 2023, Plaintiffs sought a temporary restraining order and preliminary injunction, preventing the Board and OCM from issuing any licenses until this litigation resolved. *See* Dkt. 10. On February 2, 2024, after full briefing and a hearing, the Court denied Plaintiffs' application for preliminary relief, holding that they were not likely to succeed on the merits or show irreparable harm because, *inter alia*, the dormant commerce clause did not apply New York

---

[2] Processing of the Retail December Queue is also affected by an existing injunction that prohibits the Board and OCM from reviewing applications of cannabis dispensary licenses from any applicant who had not by December 12, 2024, either received a provisional license from the Board or submitted a notification to the municipality in which the applicant intended to open a dispensary. Dkt. Nos. 50 (memorandum and order), 97 (clarifying order), *Organic Blooms, LLC v. N.Y. State Cannabis Control Bd.*, Index No. 904497-24 (N.Y. Sup., Albany County 2024).

State cannabis market because that market remained federally illegal. *See* Dkt. 36. On February 11, 2024, Plaintiffs filed a notice of appeal. *See* Dkt. 38. On August 12, 2025, after briefing and oral argument, the Second Circuit issued its decision in this matter, holding that the dormant commerce clause did apply to the New York State cannabis market, and remanded the decision to the Court for further proceedings consistent with the decision. *See* Dkt. 53; *Variscite Four, LLC v. New York State Cannabis Control Board*, 152 F.4th 47, 66 (2d Cir. 2025).

However, the Second Circuit did not hand Plaintiffs anything close to a complete victory. First, the Second Circuit held that Plaintiffs lacked standing to challenge the issuance of CAURD licenses in the first application window. 152 F.4th at 56-57 ("Variscite therefore has not established its standing to challenge [the CAURD] program."). Second, the Court also held that Plaintiffs lacked standing to challenge "November Pool licensing scheme in its entirety," that is, "challenge the internal ordering of the November Queue." *Id.* at 58.

Third, the Second Circuit held that Plaintiffs had standing to make the "narrow argument," that the processing of the November Queue as a whole before the Retail December Queue may accord "an unlawful preference" to those in the November Queue. *Id.* at 58, 59. However, the Circuit determined that the record was "insufficient to permit injunctive relief," finding "[t]he criterion for accessing the November Pool is facially neutral." *Id.* at 65. Absent evidence that the November Queue was designed to discriminate against non-New Yorkers, Plaintiffs failed to show that they were "likely to succeed on the merits of its dormant Commerce Clause challenge to the November [Queue]." *Id.* at 65.

Finally, the Circuit held that Plaintiffs had standing and are likely to succeed on the merits when it comes to the ordering of the Retail December Queue, namely not according to Plaintiffs the extra priority that those with New York State marijuana-related convictions may be eligible to

8

receive. *See id.* 58, 64-65. However, in the Retail December Queue, OCM will treat all marijuana-related convictions (out-of-state and New York state) as qualifying to receive extra priority, therefore affording Plaintiffs the extra priority that those with New York State marijuana-related convictions are eligible to receive. McKeage Decl.¶ 32.

## STANDARD OF REVIEW

Injunctive relief, such as the preliminary injunction sought by Plaintiffs here,[3] is "an extraordinary remedy *never* awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) (emphasis added). Specifically, the movant bears the burden of establishing, by clear and convincing evidence, that (a) it is likely to succeed on the merits; (b) it is likely to suffer irreparable harm in the absence of preliminary relief; (c) the balance of equities tips in its favor; and (d) an injunction is in the public interest. *See Winter*, 555 U.S. at 20. The final two factors—the balance of equities and the public interest— "merge when the Government is the opposing party." *L&M Bus Corp. v. Bd. of Educ. of the City Sch. Dist. N.Y.*, 2018 WL 2390125, *13 (E.D.N.Y. May 25, 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

In addition, the Second Circuit has "held the movant to a heightened standard" where (i) an injunction is "mandatory" (i.e., altering the status quo, rather than maintaining it), or (ii) the injunction "will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *New York v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015); *see A.H. by & through Hester v. French*, 985 F.3d 165, 176 (2d Cir.

---

[3] While Plaintiffs' papers are unclear as to whether they seek a TRO or a Preliminary Injunction, it is of no moment since the applicable standard for either type of relief is the same. *See Antonyuk v Hochul*, 635 F. Supp. 3d 111, 124 (N.D.N.Y. 2022) (citing *Fairfield Cnty. Med. Ass'n v. United Healthcare of New England*, 985 F. Supp. 2d 262, 270 (D. Conn. 2013), *aff'd as modified sub nom. Fairfield Cnty. Med. Ass'n v. United Healthcare of New England, Inc.*, 557 F. App'x 53 (2d Cir. 2014); *AFA Dispensing Grp. B.V. v. Anheuser–Busch, Inc.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010)

2021).[4] In such cases, the movant must show a "clear" or "substantial" likelihood of success on the merits and make a "strong showing" of irreparable harm, in addition to showing that the preliminary injunction is in the public interest. *See id.* (quoting *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999) and *Doe v. New York University*, 666 F.2d 761, 773 (2d Cir. 1981)).

ARGUMENT

**I.      PRELIMINARY RELIEF RELATED TO THE NOVEMBER QUEUE CLAIM IS NOT WARRANTED**

Plaintiffs are not entitled to preliminary relief on their November Queue claim. First, Plaintiffs have done nothing to disturb the Second Circuit's holding that Plaintiffs failed to show any likelihood of success on its November Queue claim. Second, without likelihood of success, Plaintiffs also cannot show irreparable injury from the nondiscriminatory manner in which the November Queue was implemented. Finally, the equities and the public interest both weigh heavily against such preliminary relief. Thus, this Court should deny Plaintiffs' motion as it applies to the November Queue.

**A.      The Second Circuit Held that Plaintiffs Cannot Show Likelihood of Success on the Merits of the November Queue Claim**

The Second Circuit expressly ruled that, based on the record as it stands, Plaintiffs failed to show a likelihood of success on the merits when it came to challenging the processing of the November Queue as a whole before the Retail December Queue. *Variscite*, 152 F.4th at 65 ("Variscite has not shown that it is likely to succeed on the merits of its dormant Commerce Clause challenge to the November Pool."). The Second Circuit held that the processing of the November Queue ahead of the Retail December Queue was "facially neutral," and Plaintiffs had not "adduced sufficient evidence" that the purpose or effect of the November Queue was to prioritize New

---

[4] The requested temporary restraining order and preliminary injunction are mandatory in nature because Plaintiffs seek to alter the status quo by requiring over 600 operating businesses to shutter their doors.

10

Yorkers over those from other states. *Id.* Plaintiffs do not offer any additional evidence regarding the purpose or effect of the November Queue. *See* Dkt. 70. Rather, Plaintiffs resubmit the prior record with several irrelevant additions, including communications between counsel and newspaper articles, none of which bolster the record in a relevant way in Plaintiffs favor. *See id.* As such, the Second Circuit's assessment of Plaintiffs' likelihood of success on its November Queue claim must stand.

   **B.    The Circuit Holding Is Fatal to Claims of Irreparable Harm on the November Queue Claim**

Second, since Plaintiffs fail to show likelihood of success on their November Queue claim, they also fail to show irreparable harm. The injury that Plaintiffs are alleged to suffer is a constitutional one, and thus, the inquiries into likelihood of success and irreparable harm dovetail. *See Variscite*, 152 F.4th at 60 ("When, as here, a plaintiff alleges constitutional injury, a strong showing of a constitutional deprivation that results in noncompensable damages ordinarily warrants a finding of irreparable harm . . . Likelihood of success on the merits is therefore the dominant, if not the dispositive, factor" in awarding preliminary relief." (quoting *A.H. ex rel. Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021) (internal quotation marks omitted)). Thus, Plaintiffs failure to show likelihood of success is fatal to their showing irreparable harm.

The Second Circuit held Plaintiffs did not show that the November Queue violates the dormant Commerce Clause. The Circuit found that the existence of the November Queue was "facially neutral," and thus, subject to the permissive *Pike* balancing test. *Id.* at 65; *see also Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Under the *Pike* test, State action will only be "struck down if the burden imposed on interstate commerce clearly exceeds the putative local gains." *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 47 (2d Cir. 2007). The Second Circuit applied this test to the existence of the November Queue and found that it survived the *Pike*

11

test. *Variscite*, 152 F.4th at 65. Since the Circuit has held the November Queue passes constitutional muster, there can be no constitutional injury, and no irreparable harm to Plaintiffs as a result of the November Queue being processed before the Retail December Queue. *See id.*

Plaintiffs' argument that they are also irreparably harmed by not being an early entrant in the marketplace fare no better for the same reason. *See* Pls' Br. at 18-19. Plaintiffs' delayed entry into the market is due to the access requirements of the November Queue, which are an application made prior to November 17, 2023, including proof of control of a location. McKeage Decl ¶¶ 12-13; Byron Decl. ¶ 26. Thus, the reason for Plaintiffs' purported delayed entry is their failure to meet the "facially neutral" requirements of the November Queue. *Variscite*, 152 F.4th at 65. That failure is not due to any constitutional infirmity in the November Queue, but Plaintiffs' own decisions. McKeage Decl. ¶¶ 20-21; Byron Decl. Exs. C, F. Were the Court to use this injury to undo the November Queue, it would have to find the November Queue violates the dormant Commerce Clause in direct contravention of the Second Circuit's holding. *Variscite*, 152 F.4th at 65.

### C.     Any Preliminary Relief on the November Queue Claim Is Against the Public Interest

Finally, the public interest strongly weighs against granting the motion as it pertains to the November Queue. In this case, to properly assess the "merged" balance of equities and public interest, *Nken*, 556 U.S. at 435, the Court must consider the effect any injunction would have on non-parties, especially since this injunction would have industry-wide effects. *See NML Capital Ltd. v. Republic of Argentina*, 699 F.3d 246, 264 (2d Cir. 2012) (requiring district court to extensively consider injunctions effect on non-parties whose operations and processes would be affected by the injunction); *Finch v. Treto*, 82 F.4th 572, 579 (7th Cir. 2023) (explaining that when licenses have already been issued, the harm to the plaintiff in a licensing scheme challenge is

"vastly outweighed by the severe harm to the reliance interests of the license holders and to the public's interest in the orderly completion of the . . . licensing process.").

If the Court were to grant Plaintiffs' requested relief, it may require 650 businesses to wind down their operations and shutter their doors in 30 to 60 days. *See* Dkt. 68-1; McKeage Decl. ¶ 33. Plaintiffs' utter disregard for the public interest is breathtaking. Plaintiffs proposed order would inevitably bankrupt many small business owners, render hundreds of workers unemployed, upend the legislative regulatory goals of the State to create a functioning cannabis industry, and damage the public fisc. McKeage Decl. ¶¶ 33. Further, the closure of the vast majority, if not all the dispensaries, would result in collateral consequences to the cultivators and processors who supply them. *Id.* ¶ 34. Without buyers for their product, those cultivators and processors would inevitably also be forced to close or substantially reduce their operations. *Id.* Simply put, the relief Plaintiffs seeks would permanently damage the industry at all levels, and thus, the public interest weighs vastly in favor denying the motion.

### D.    Plaintiffs Proposed Relief Related to the November Queue Goes Beyond the Bounds of Rule 65(d)

Plaintiffs seek to enjoin not just the future actions of Defendants but ask this court to force nonparties to cease operation. Dkt. 68-1. Courts may only issue injunctions that bind the "parties," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation with" those parties and their agents. Fed. R. Civ. P. 65(d). This rule clarifies that the distinction between "entering an injunction against a non-party, which is forbidden, and holding a non-party in contempt for aiding and abetting in the violation of an injunction that has been entered against a party, which is permitted." *Havens v. James*, 76 F.4th 103, 111 (2d Cir. 2023) (quoting *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 96 F.3d 1390, 1395 (Fed. Cir. 1996)). Any injunction issued in a particular case cannot bind

13

nonparties unless the nonparty's actions were "taken for the benefit of, or to assist, a party subject to the decree in violating the injunction." *Id.* at 112 (internal quotation marks omitted).

Here, the licensees directly impacted by Plaintiffs proposed relief do not fit any of these categories, and therefore, cannot be properly enjoined in this action. *Id.* Indeed, none of the 650 impacted licensees will have received notice or an opportunity to be heard in this proceeding, yet their livelihood and capital will be stripped from them. *See* McKeage Decl. ¶¶ 23, 33, 34. In short, what Plaintiffs ask this Court to do is simply not permitted by Rules, and thus, the Court should deny Plaintiffs' motion for preliminary relief on its November queue claim.

## II.    PRELIMINARY RELIEF RELATED TO THE DECEMBER QUEUE CLAIM IS UNNECESSARY

Plaintiffs are entitled to relief when it comes to their Retail December Queue claim, but no injunction is necessary because they have already received full relief as it pertains to their place in the Retail December Queue. Plaintiffs are being treated equivalently to any similarly situated applicant with extra priority, namely, they have received three randomly allocated spots in the queue. McKeage Decl. ¶¶ 15, 17, 22, 32. Anything more would treat Plaintiffs not on equal footing with others with extra priority but with a leg up. Thus, no preliminary relief related to the Retail December Queue claim is necessary.

The Second Circuit found that Plaintiffs were likely to succeed in showing that failing to apply extra priority to those applicants who were otherwise eligible but had out-of-state marijuana convictions violated the dormant Commerce Clause. *Variscite*, 152 F.4th at 64-65. The Circuit held that at the core of the dormant Commerce Clause is an economic "anti-discrimination principle," *id.* at 60 (quoting *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023)), where "[d]iscrimination means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* at 63 (quoting *N.Y. Pet Welfare Ass'n*

14

*v. City of New York*, 850 F.3d 79, 89 (2d Cir. 2017) (internal quotation marks omitted). The Circuit found that the State's application of extra priority only to in-state marijuana convictions "favor[s] New Yorkers over others," and can only be constitutional if the State has "no other means to advance a legitimate local purpose." *Id.* at 64 (internal citations omitted). Thus, if in-state and out-of-state economic interest are treated the same in the Retail December Queue ordering, the dormant Commerce Clause is satisfied.

Plaintiffs have been treated the same as any other similarly situated applicant with extra priority. Extra priority is given to those who indicated in their applications that they qualify, and the agency only assesses whether the extra priority was improperly asserted when it reaches the application in the queue order. McKeage ¶ 15; Byron Decl ¶ 29. Plaintiffs both indicated in their applications that they were entitled to extra priority, and were granted three randomly generated spots in the Retail December Queue. McKeage Decl. ¶¶ 18, 20-22; Bryon Decl. ¶¶ 12, 17. This is exactly the same treatment that a similarly situated applicant with in-state marijuana convictions received. McKeage Decl. ¶ 22. OCM shall continue to treat Plaintiffs in the same manner as similarly situated applicants with in-state convictions, if and when OCM reviews Plaintiffs' applications. *Id.* ¶¶ 22, 32.

Thus, Plaintiffs already have the benefit of equal treatment required by the dormant Commerce Clause. Any additional relief would simply give Plaintiffs an unfair and unwarranted advantage over those with the New York State marijuana convictions, which goes well beyond anything required by the dormant Commerce Clause, or indeed, any other part of the Constitution. *See* McKeage Decl. ¶ 18. An injunction simply requiring Defendants to do what they have already done would amount to an "obey the law" injunction, which are disfavored. *See N.L.R.B. v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941); *see also Rowe v. N.Y. State Division of Budget*, No. 1:11-

15

CV-1150 (LEK/DRH), 2012 WL 4092856, at *7 (N.D.N.Y. Sept. 17, 2012); *New York v. Shinnecock Indian Nation*, 560 F. Supp. 2d 186, 189 (E.D.N.Y. 2008).

As such, preliminary relief related to the ordering of the Retail December Queue is unnecessary.

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion for a temporary restraining order and preliminary injunction should be denied.

Dated: Albany, New York
May 5, 2026

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendants*
The Capitol
Albany, New York 12224

By: *s/ Benjamin Loefke*
Benjamin Loefke
Special Litigation Counsel
Bar Roll No. 516796
Telephone: (518) 776-2739
Email: Benjamin.Loefke@ag.ny.gov

TO:   Counsel of record (*Via ECF*)

16