UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

VARISCITE NY FOUR, LLC AND VARISCITE NY FIVE, LLC,

        *Plaintiffs*,

  v.

NEW YORK CANNABIS CONTROL BOARD; NEW YORK STATE OFFICE OF CANNABIS MANAGEMENT; JESSICA C. GARCIA; AND SUSAN FILBURN,

        *Defendants.*

Civil Action No. 1:23-cv-01599 (ANM/PJE)

---

**PLAINTIFFS' REPLY IN SUPPORT OF RENEWED MOTION FOR TEMPORARY**

**RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Jeffrey M. Jensen, Esq. (*Pro Hac Vice*)
New York Reg. No.: 5375704
*Attorney for Plaintiffs – Lead Counsel*
9903 Santa Monica Blvd. #890
Beverly Hills, CA 90212
(310) 909-7043
Email: jeff@jeffreyjensen.com

1

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 4

II.     ANALYSIS ......................................................................................................... 6

    A.    November Pool ......................................................................................... 6

        1.  *Defendants Created the November Pool to Benefit CAURD
            Applicants—which Violates the Dormant Commerce Clause* .............. 6

        2.  *The Evidence of Discrimination in Practical Effect Is within
            Defendants' Possession, and the Court Should Not Countenance Their
            Tactics* ................................................................................................. 11

        3.  *Defendants Misstate the Second Circuit Holding* .............................. 14

        4.  *Public Interest* .................................................................................... 16

        5.  *The Requested Injunction Does Not Exceed Rule 65(d)* ..................... 17

    B.    December Pool ......................................................................................... 17

III.    CONCLUSION ................................................................................................ 19

**TABLE OF AUTHORITIES**

*Fiore v. New York State Cannabis Control Bd.*, No. 907282-23 (Sup. Ct., Albany Cnty., 2023)........ 7
*Frick v. Bahou*, 56 N.Y.2d 777 (1982) ................................................................................. 18
*Gilman v. New York State Div. of Hous. & Cmty. Renewal*, 99 N.Y.2d 151 (2002).......................... 17
N.Y. A.P.A. Law § 201................................................................................................ 18
NY CANBS § 10(19)................................................................................................... 7
NY CANBS §87(3)(c) ................................................................................................ 18
*Rovinsky v. Zucker*, 167 A.D.3d 122 (2018)................................................................. 18
*Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, 152 F.4th 47 (2d Cir. 2025) ...... 11
*Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, 152 F.4th 47, 65 (2d Cir. 2025) .. 6
*Variscite NY One, Inc. v. New York*, 640 F. Supp. 3d 232 (N.D.N.Y. 2022), reconsideration denied,
     No. 122CV1013GLSDJS, 2023 WL 1420662 (N.D.N.Y. Jan. 31, 2023). ..................................... 7
*Visiting Nurse Serv. of New York Home Care v. New York State Dep't of Health*, 5 N.Y.3d 499
     (2005) ................................................................................................................ 18

## I.    INTRODUCTION

Try as they might, Defendants cannot change the salient facts that determine this Motion: (1) the Second Circuit held Plaintiffs have standing to challenge both the November Pool and the December Pool, (2) the Second Circuit concluded residency preferences for cannabis licenses violate the dormant Commerce Clause, and (3) Plaintiffs filed the Motion for TRO and PI before Defendants had processed any applications or issued any Licenses.  Thus, precedents indicate the Court should enjoin Defendants from issuing any Licenses under either the November Pool or the December Pool, including already-issued Licenses.

Defendants continue to flout their constitutional obligations, and they continue to cause harm to applicants by delaying implementation of a constitutional program and encouraging applicants to spend money on this unconstitutional program.  Defendants admit that "[a]t this time, the Board and OCM are still processing applications for dispensaries in the November Queue."  Yet, Plaintiffs filed this lawsuit in December 2023 and the Second Circuit issued opinion in August 2025.  Even last Friday, May 1, 2026, after Plaintiffs filed the renewed Motion, Defendants sent another of their weekly emails announcing more adult use dispensary openings.  (Reply Aff. Jensen, Ex. 1.)  Defendants, and the applicants, have nobody to blame but Defendants for any harm caused to applicants.

Defendants argue that "Plaintiffs do not present any meaningfully new evidence to support their renewed application, and instead rely on the same record that existed before the Second Circuit." But as Plaintiffs explained in their Motion, Plaintiffs have been diligently seeking discovery from Defendants for half a year, including filing a request with the Magistrate to open discovery on November 5, 2025; filing a notice of Defendants' non-opposition to the Motion on December 8, 2025; and attending hearings on the Motion with the Magistrate on December 19, 2025 and January 7, 2026. At the December 19, 2025 hearing, the Magistrate ordered the parties to confer regarding Discovery in aid of settlement, and ordered Defendants to file a status report before the January 7, 2026 hearing. After the meet and confer, Defendants refused to provide *any* discovery.  Defendants filed their status report on January 6, 2026, in which "Defendants oppose early discovery."

Defendants' strategy has been transparent from the outset of this case. Defendants are doing everything within their power to slow down this case so they can issue Licenses before they are placed under an injunction, and then when the Court inevitably rules Defendants' Adult Use Application Program is unconstitutional, Defendants will argue the Court should not enjoin already-issued Licenses. Sure enough, Defendants make that very argument in their Opposition, stating that if the Court enjoins this constitutional violation, it will require business to close. (Opp'n at 13.)

Plaintiffs warned the Court about this 2.5 years ago in December 2023. Plaintiffs' Motion for TRO and PI states:

> Plaintiffs seek preliminary relief to prevent Defendants from awarding Licenses, other than to the dispensaries that are already fully licensed and operating as of the filing of the Complaint. The number of available Licenses is limited, and Plaintiffs will be unable to operate their business if Defendants award the available Licenses while the lawsuit is pending. If the Court does not grant injunctive relief, Plaintiffs cannot obtain money damages at the end of the case because the Eleventh Amendment prohibits monetary awards against a state or officials acting in their official capacity.

(Plaintiffs' Motion for TRO and PI, Dkt. #11 at 4.)

Plaintiffs also warned the Second Circuit more than two years ago on April 8, 2024 that this was Defendants' strategy, Plaintiffs wrote:

> ***Thus, if the Second Circuit does not reverse the District Court and remand with instructions to issue a preliminary injunction, Respondents will issue all the licenses while the case is proceeding***. Appellants will be left without a remedy for the constitutional violation against it because Appellants cannot recover monetary damages from Respondents and ***Respondents will argue the Court should not claw back Licenses at the end of the case as a matter of equity because the Licenses will have been issued too long ago to recall***.

> ***In fact, Respondents used that strategy last year in response to the CAURD injunction in the Variscite One case***. In *Variscite One*, the district court enjoined Respondents from issuing licenses for the geographic area of the state where the applicant applied. 2022 WL 17257900. ***Respondents then raced to issue all available licenses for the thirteen non-enjoined geographic areas of the state before another applicant could sue for an injunction against one of those areas***.

> During the injunction, Respondents even doubled the number of Licenses they would grant from 150 to 300, and then expanded it again to 463. (Decl. Kagia, JA395; Respondents' Memo, JA432.) Respondents did this to issue Licenses before another excluded applicant could obtain an injunction for another geographic area.

(Appellants' Opening Brief, Second Circuit Docket #25.1.)

Therefore, Plaintiffs ask the Court to grant their Motion.

## II.    ANALYSIS

### A.    <u>November Pool</u>

#### 1.    <u>*Defendants Created the November Pool to Benefit CAURD Applicants— which Violates the Dormant Commerce Clause*</u>

Defendants created the November Pool to create a preference for applicants in the 2022 CAURD Application Program who were prevented from opening their dispensaries by a New York Supreme Court injunction.  But the CAURD Application Program violated the dormant Commerce Clause by preferring New York residents over outsiders.  Thus, as the Second Circuit stated, preferring CAURD applicants in the 2023 Adult Use Application Program violates the dormant Commerce Clause.

The Second Circuit understood this preference.  The Second Circuit wrote:

> November Pool Applications. Variscite also challenges the creation of a November Pool that takes precedence over all December Pool applicants. ***Variscite's theory is that the November Pool was created as a vehicle to preference CAURD applicants in limbo. And because CAURD applicants are, almost necessarily, New Yorkers, Variscite argues that this maneuver violated the Dormant Commerce Clause***.
>
> While ***this theory may yet have merit***, the preliminary record is insufficient to permit injunctive relief based on it. The criterion for accessing the November Pool is facially neutral: control of adequate premises in New York for a dispensary by November 17, 2023. Variscite reasons that the law is nevertheless discriminatory in its purpose or effect because out-of-staters were unlikely to meet this criterion. ***Per Variscite, out-of-staters would have been unlikely to have already acquired premises, since they were ineligible to open dispensaries under CAURD. And they had slim odds of finding suitable premises before the November Pool deadline because of onerous zoning restrictions***.
>
> Though ***Variscite's logic is sound***, it has not adduced sufficient evidence that the November Pool had the purpose or effect of prioritizing New Yorkers. We therefore cannot apply strict scrutiny at this stage.

*Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, 152 F.4th 47, 65 (2d Cir. 2025) (footnote omitted).

In September 2023, Defendants created the Adult Use Application Program (including the

November Pool and December Pool) abruptly and unexpectedly in response to a New York Supreme Court preliminary injunction against their 2022 CAURD Application Program.

Defendants' 2022 CAURD Application Program was the subject of two separate lawsuits that resulted in two separate preliminary injunctions. *First*, in September 2022, an out-of-state company sued in the Northern District under the dormant Commerce Clause. *Variscite NY One, Inc. v. New York*, 640 F. Supp. 3d 232 (N.D.N.Y. 2022), reconsideration denied, No. 122CV1013GLSDJS, 2023 WL 1420662 (N.D.N.Y. Jan. 31, 2023). The plaintiff alleged the CAURD Application Program favored New York applicants over out-of-state applicants by requiring applicants to have a conviction for a cannabis crime in New York and a "significant New York presence." The Northern District of New York issued a preliminary injunction in November 2022 and the case settled in May 2023 while the preliminary injunction was in place. The first preliminary injunction was then vacated.

*Second*, in August 2023, individuals who did not meet the requirements to participate in the 2022 CAURD Application Program sued in Albany County Supreme Court alleging the CAURD Application Program violates the New York Constitution's separation of powers doctrine. *Fiore v. New York State Cannabis Control Bd.*, No. 907282-23 (Sup. Ct., Albany Cnty., 2023). Even though the plaintiffs never applied in the CAURD Application Program, and the plaintiffs brought the litigation eleven months after the program closed (the application period ran from August 25 to September 25, 2022) and after the top 463 CAURD applicants had been selected for licensure, the Supreme Court issued a preliminary injunction against the CAURD program.

The plaintiffs in *Fiore* alleged Defendants exceeded the enabling statute in creating the CAURD Application Program. Under the enabling statute, "the initial adult-use cannabis retail dispensary license application period shall be opened for all applicants at the same time." NY CANBS § 10(19). The plaintiffs alleged Defendants exceeded their authority by creating the CAURD Application Program, which was open only to applicants who were 51% owned by an individual who (1) was convicted of a cannabis crime and (2) owned a profitable business for at least two years. The plaintiffs—who were not convicted of cannabis crimes and did not own profitable

7

businesses for at least two years—alleged Defendants should have accepted applications from all applicants at the same time, including accepting applications from the plaintiffs.

On August 18, 2023, the Supreme Court issued a preliminary injunction preventing Defendants from issuing CAURD Licenses.  (Settlement, Dkt. #12-4 at 2.)  In the preliminary injunction, the court allowed Defendants to provide a list of CAURD applicants who met all requirements for licensure before the plaintiffs filed the complaint, and those applicants would be exempt from the preliminary injunction.  (*See* Amended Preliminary Injunction, Aff. Jensen, Ex. 11.)

On August 23, Defendants provided a list of 30 applicants (out of the 463 winning applicants selected in the CAURD Application Program) who met all requirements for licensure before the plaintiffs filed the complaint.  *Id*.  On August 30, the court found that Defendants misrepresented the readiness of the 30 applicants.  *Id.*  Thus, the court declined to exempt any applicants from the preliminary injunction.  *Id.*  Instead, the court determined that for any applicant Defendants believed should be exempt from the preliminary injunction, Defendants would have to "certify, under oath and on an applicant-by-applicant and requirement-by-requirement basis" that the applicant had met the standard.  *Id*.

Thus, on August 30, Defendants realized they had painted themselves into a corner with their unconstitutional CAURD Application Program.  Defendants knew the court was likely to convert the preliminary injunction into a permanent injunction at the end of the case because Defendants had not opened the cannabis applications to all applicants at the same time, as required by the enabling statute.

Defendants faced strong public criticism from the 463 applicants selected for licensure in the CAURD Application Program.  Many news outlets, both mainstream and cannabis-industry specific, reported on the frustration directed at Defendants from the public and industry persons.  At Defendants' September 12, 2023 Board meeting—where they adopted the Adult Use Application Program Regulations as discussed below—Defendants faced two hours of harsh criticism from

8

industry persons due to the injunction and delays.[1]

Thus, at the September 12, 2023 Board meeting, Defendants adopted the Adult Use Application Program Regulations to comply with the enabling statute by giving all applicants the opportunity to apply at the same time.  Defendants did this in hopes they could later settle the *Fiore* lawsuit and have the preliminary injunction dissolved.  As noted above, Defendants included in that Adult Use Application Program the distinction between the November Pool and the December Pool to benefit the CAURD applicants.  Defendants announced the Adult Use Application Program to the public the same day, September 12 , 2023.  (Press Release, Dkt. #32-4.)

Defendants opened the Adult Use Application Program window less than a month later, to run from October 4 through December 4. (*Id*.)  ***Defendants' quick turnaround for the Adult Use Application Program was intentional, and it was designed to benefit the applicants in Defendants' unconstitutional CAURD Application Program.***  Defendants suggested that CAURD applicants reapply in the Adult Use Application Program "[d]ue to the pending litigation challenging the validity of the CAURD program."  (FAQ, Dkt. #12-5 at 9.)

Defendants knew the 463 selected CAURD applicants were already securing properties for their dispensaries before the New York Supreme Court injunction.  Thus, Defendants divided the Adult Use Application Program into two pools, the November Pool for applicants who already leased/owned property and applied between October 4 and November 3, and the December Pool for applicants who had not already leased/owned property and applied between October 4 and December 4.

Defendants designed the November 3 deadline for applicants with properties to benefit CAURD applicants and reduce the likelihood that non-CAURD applicants could compete with the

---

[1]    Respondents admit they removed public criticism at the meeting from their published official video of the meeting.  https://www.ganjapreneur.com/new-york-regulators-remove-video-of-meeting-where-community-is-critical-of-adult-use-rollout/.  Respondents' official video of the meeting is available at https://youtu.be/dJ6AknB1P6U?si=MNo6qP9wKY1HzbEk.

CAURD applicants.  By statute, cannabis dispensary applicants must notify the municipality where their dispensaries are to be located 30 days before submitting the application.  NY CANBS § 76(1).  Thus, applicants who wanted to participate in the November Pool had to submit their proposed dispensary addresses to the municipalities by October 4, 2023.  ***That left prospective November Pool applicants three weeks from the September 12 adoption of the Regulations to lease/buy properties and submit their notices to the municipalities.***

Defendants were aware that the pool of potential applicants who could meet that deadline would overwhelmingly be comprised of former CAURD applicants.  Defendants greatly restrict the properties that can qualify for cannabis dispensaries, including zoning restrictions and buffer zones.  *See, e.g.*, 9 NYCRR 119.1.  Thus, it was very difficult for prospective applicants to obtain properties.

Defendants also knew, however, the 462 selected CAURD applicants had already been searching for properties, and some already leased/owned properties.  (Decl. Kagia, Dkt. 28 at 2-3.)  ***Thus, the November Pool deadline allowed Defendants to favor CAURD applicants—who could disproportionately meet the October 4, 2023 deadline to supply addresses to the municipalities— over other prospective applicants***.

In fact, Defendants opened the application program so abruptly and the deadlines were so onerous that Defendants extended the deadlines in response to public backlash.  The final deadlines were November 17 and December 18.  (Email Announcement, Dkt. 32-5.)  That provided November Pool applicants more time—but only two weeks more time—to obtain properties.

Defendants' intentional use of the Adult Use Application Program to benefit the CAURD applicants is further evidenced by the fact that the Application System required Adult Use applicants to state whether they were prior CAURD applicants and provide their CAURD application number.  (Sample Application, Dkt. #12-2 at 20.)

On November 24, after the Adult Use Application Program deadline, Defendants settled the *Fiore* lawsuit by "agree[ing] that Defendants shall not issue any new or additional provisional CAURD licenses until April 1, 2024, in order to dedicate OCM's application and licensing resources in the next coming months to the current application and licensing window for adult use licenses…"

(Settlement Agreement, Dkt. 12-4 at 7.)

***Thus, the November Pool Deadline also burdened out-of-state applicants over New Yorkers in violation of the dormant Commerce Clause.*** The three-week deadline to identify, lease, and submit properties to municipalities placed a higher burden on out-of-state persons than New York residents.

The Second Circuit understood this preference. The Second Circuit wrote:

> November Pool Applications. Variscite also challenges the creation of a November Pool that takes precedence over all December Pool applicants. ***Variscite's theory is that the November Pool was created as a vehicle to preference CAURD applicants in limbo. And because CAURD applicants are, almost necessarily, New Yorkers, Variscite argues that this maneuver violated the Dormant Commerce Clause***.
>
> While this theory may yet have merit, the preliminary record is insufficient to permit injunctive relief based on it. The criterion for accessing the November Pool is facially neutral: control of adequate premises in New York for a dispensary by November 17, 2023. Variscite reasons that the law is nevertheless discriminatory in its purpose or effect because out-of-staters were unlikely to meet this criterion. Per Variscite, out-of-staters would have been unlikely to have already acquired premises, since they were ineligible to open dispensaries under CAURD. And they had slim odds of finding suitable premises before the November Pool deadline because of onerous zoning restrictions.
>
> Though ***Variscite's logic is sound***, it has not adduced sufficient evidence that the November Pool had the purpose or effect of prioritizing New Yorkers. We therefore cannot apply strict scrutiny at this stage.

*Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, 152 F.4th 47, 65 (2d Cir. 2025) (footnote omitted).

### 2. ***The Evidence of Discrimination in Practical Effect Is within Defendants' Possession, and the Court Should Not Countenance Their Tactics***

For 2.5 years, Plaintiffs have been seeking discovery in this action, including serving early Requests for Production under Rule 26(d); filing a Motion for Limited Expedited Discovery; and waiting for the Court to schedule the case management conference to trigger the Rule 26(f) conference that opens discovery.

The Second Circuit issued the mandate in this case on October 30, 2025. ***The next day***, October 31, 2025, Plaintiffs served early Requests for Production under Rule 26(d)(2). (Reply Aff.

Jensen, Ex. 2.)

On November 3, 2025, Defendants' counsel responded with an improper attempt to "reject and return" Plaintiffs' Requests for Production.  Defense counsel wrote: "I have to reject and return your request for production as premature at this juncture.  The case is in an unusual posture given the appeal, but Defendants' pre-answer motion to dismiss is still technically pending.  Even if we don't factor in the motion to dismiss, no Rule 16 conference has been scheduled, and therefore no meet and confer has been conducted to trigger service under Rule 26(d)(2)(B)."  (*Id*.)

Plaintiffs' counsel responded that same day, explaining that "[a]s to the Requests for Production, Defendants do not have the option of rejecting them.  Under FRCP 26(d), a party may serve requests for production 21 days after service of the summons. The receiving party's deadline to respond, however, does not begin until the FRCP 26(f) conference.  In other words, I served the Requests for Production early as a courtesy so that Defendants could begin collecting documents before the 30 day deadline begins to run."  (*Id*.)

Two days later, on November 5, 2025, Plaintiffs filed with the Magistrate a Motion for Limited Expedited Discovery.  (Dkt. #56.)  Plaintiffs noted that "[t]his case began nearly two years ago in December 2023, but discovery has not yet opened. The parties have not held the Rule 26(f) conference of counsel because the Court has not set the Rule 26(b) scheduling conference."  (*Id*.)  Plaintiffs noted their many attempts to expedite this case and Defendants' opposition to every one of those attempts to expedite.  (*Id*.)  Plaintiffs also explained:

> ***Defendants, while delaying this litigation, have been hurriedly issuing Licenses under the Adult-Use Application Program that Plaintiffs challenge and seek to enjoin.*** Defendants hope to moot Plaintiffs' request for an injunction by issuing all Licenses to the November batch before the Court rules. Defendants used this tactic in 2022 in the *Variscite One* case. In that case, the court enjoined three geographic areas of the state. While the motion for injunction was pending, Defendants hurriedly processed the License applications for other geographic areas in the hopes of mooting any future challenge by issuing the Licenses before another plaintiff could seek an injunction for those areas.

(*Id*. (emphasis added).)

12

*Plaintiffs further explained that although Defendants had not issued any Licenses when Plaintiffs filed this lawsuit, Defendants by that time had issued 517 Licenses.* Plaintiff wrote: "Defendants send emails every week notifying the public of the newly opened adult-use retail dispensaries that week. Defendants received approximately 1,600 applications in the November Batch. To date, Defendants have licensed 517 Adult Use Dispensaries. (*Id.*)

Defendants did not respond to Plaintiffs' Motion for Leave to Conduct Limited Expedited Discovery, and the Court took no action on Plaintiffs' Motion.

On December 8, Plaintiffs again wrote to the Court, stating:

> More than a month ago, on November 5, 2025, Plaintiff Variscite NY Four, LLC ("Plaintiff") filed a letter motion with this Court requesting expedited discovery. The typical response deadline for a letter motion in the Northen District is three days. Defendants have far exceeded their deadline to oppose Plaintiff's request. Under Local Rule 7.1(a)(3), "the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

(Dkt. #57, 58.)

Plaintiffs Letter also explained that Defendants continued to issue Licenses while they delayed activities in this case. Plaintiffs wrote:

> In the letter motion, Plaintiff demonstrated an urgent need for discovery ahead of a renewed motion for preliminary injunction as to the November Batch. *As of Plaintiff's November 5, 2025 letter motion, Defendants had issued 517 Adult Use Dispensary licenses. As of December 8, 2025, Defendants have issued 539 Adult Use Dispensary licenses.* Defendants continue to hurriedly issue licenses to the November Batch applicants in an attempt to moot an injunction against that batch.

(*Id.* (emphasis added).)

On December 8, 2025, Defendants responded that "expedited discovery should be denied as premature." (Dkt. #60.) *Notably, Defendants considered discovery "premature" even though the case was two years old, the Second Circuit concluded Plaintiffs had a likelihood of success four months earlier, and the Second Circuit issued the Mandate more than a month earlier.*

On December 19, 2025, Magistrate Judge Evangelista held a conference with the parties regarding Plaintiffs' Motion for Leave to Conduct Limited Expedited Discovery. Magistrate Judge

13

Evangelista scheduled a follow-up conference for January 7, 2026 and ordered Defendants to provide an update on Discovery before then.

On January 6, 2026, Defendants filed their update, in which "Defendants oppose early discovery." (Dkt. #62.) By then, two months had passed since the Second Circuit issued its mandate.

On January 7, 2026, Magistrate Judge Evangelista held a conference on Plaintiffs' Motion for Expedited Discovery and took the Motion under submission.

Thus, Defendants blocked Plaintiffs from obtaining evidence about the practical effect of the November Pool while simultaneously arguing Defendants lack evidence. The discovery Plaintiffs seek is targeted directly at these issues. *See* Requests for Production and Interrogatories attached to Plaintiffs' November 5 Motion. (Reply Aff. Jensen, Ex. 3.)

Plaintiffs further note that while approximately 1,700 applicants applied in the November Pool, Plaintiffs believe that was due to an oversight by Defendants. Defendants created a loophole in the November Pool application requirements whereby a landlord could rent a property to multiple applicants. Indeed, at least one real estate firm sent unsolicited advertisements to lease property to multiple applicants. (Reply Aff. Jensen, Ex. 4.) Thus, November Pool applicants were able to stack applications at a single property. Only one such application, however, can be accepted at each location. Thus, Plaintiffs suspect this will further skew the numbers against non-CAURD applicants, who did not have their properties identified before Defendants created the Adult Use Application Program in September 2023.

### 3. *Defendants Misstate the Second Circuit Holding*

The Second Circuit did not, as Defendants state, conclude the November Pool is subject to the *Pike* balancing test. Rather, the Second Circuit held that Plaintiffs' "logic is sound" but without the evidence Defendants are withholding, they could not find that the November Pool discriminated against interstate commerce in practical effect. Therefore, the Second Circuit reviewed the challenge under the *Pike* test. The Second Circuit wrote:

> ***Though Variscite's logic is sound, it has not adduced sufficient evidence that the November Pool had the purpose or effect of prioritizing New Yorkers. We therefore***

> ***cannot apply strict scrutiny at this stage. Instead, we apply a more lenient test***: a nondiscriminatory law violates the dormant Commerce Clause only if it imposes a burden on interstate commerce that is "'clearly excessive' in relation to its local benefits." Rest. L. Ctr., 90 F.4th at 107 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970)). For this test, where the state is not discriminating against out-of-state economic interests, it does matter that marijuana is federal contraband: it is not a "clearly excessive" burden on interstate commerce for a local law to impede a national black market. Therefore, even assuming that the creation of the November Pool incidentally burdens the interstate marijuana market, the burden it imposes is not "clearly excessive." Consequently, Variscite has not shown that it is likely to succeed on the merits of its dormant Commerce Clause challenge to the November Pool.

*Variscite NY Four*, 152 F.4th at 65.

The circumstances at bar—particularly Defendants' efforts to delay discovery—dictate that a TRO and PI are warranted here, notwithstanding Plaintiffs' inability to obtain evidence regarding the practical effect of the November Pool. To obtain a TRO, the movant must establish "irreparable harm" and "***either*** (1) likelihood of success on the merits ***or*** (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Roso-Lino Beverage Distrib., Inc. v. Coca-Cola Bottling Co. of New York, Inc.*, 749 F.2d 124, 125 (2d Cir.1984) (emphasis added). Indeed, TROs are frequently issued without the aid of discovery. *Rosa v. Pathstone Corp.*, 2023 WL 6813100, at *2 (S.D.N.Y. Oct. 13, 2023). TROs are often issued to preserve the status quo long enough for the plaintiff to conduct discover. *Convergen Energy LLC v. Brooks*, 2020 WL 5549039, at *26 (S.D.N.Y. Sept. 16, 2020).

Here, the balance of hardships dictate that a TRO and PI are appropriate. By delaying discovery while speeding ahead with their Program, Defendants threaten to entrench New York's cannabis market with an applicant pool disproportionately comprised of residents in violation of the dormant Commerce. If this gambit succeeds, Defendants may be able to ensure that the bulk of the limited number of Licenses issued go to New Yorkers, in plain violation of Plaintiffs' rights and the Second Circuit's ruling. For this reason, the Court should issue a TRO to preserve the status quo ante so that Plaintiffs may exercise their right to conduct discovery, to expose the protectionist nature of Defendants' scheme.

15

4.      *Public Interest*

Defendants argue that enjoining the November Pool would require 650 dispensaries to wind down and shut their doors.  As an initial matter, it is doubtful that 650 November Pool dispensaries are open.  It appears that the weekly dispensary opening emails, which Defendants cite for their 650 number, combine the 2022 CAURD dispensaries and the November Pool dispensaries.  (*See* footnote 2 of the Renewed Motion.)  Thus, it is likely that the November Pool dispensaries represent only part of the roughly 650 open dispensaries.  More than 500 November Pool applicants have received their Licenses, but Defendants do not state how many of those November Pool applicants have opened their dispensaries to date.  (*See* Decl. McKeage ¶ 33.)

Moreover, as Plaintiffs noted in the Motion, *zero* November Pool applicants had received their Licenses, much less opened their dispensaries, when Plaintiffs filed this Motion for TRO and PI. Defendants proceeded to issue Licenses in the face of this lawsuit.  Defendants continue issuing Licenses to this day, notwithstanding the Second Circuit Opinion.  Defendants are solely responsible for any harm to applicants.  (*See* Motion at 2-4.)

Defendants can compensate November Pool applicants for any harm caused by Defendants' error.  It would not be the first time.  Plaintiffs' counsel warned Defendants in March 2024 that their method of measuring the buffer zones between dispensaries and schools was inconsistent with state law, and Defendants were permitting dispensaries to open closer to schools than permitted by state law.  Defendants ignored those warnings for 16 months.  Defendants eventually realized their mistake and created a $15,000,000 fund to assist the retailers with the cost of moving outside the school zone buffers.[2]

Finally, Defendants argue that enjoining the November Pool would harm cultivators who would have no place to sell their products.  That argument fails on two levels.  First, Plaintiffs do not seek an injunction against CAURD dispensaries.  As noted above, Defendants did not disclose how

---

[2]    *See* https://www.cannabisbusinesstimes.com/us-states/new-york/news/15752210/lawyer-alerted-new-york-regulators-of-noncompliant-dispensary-location-in-march-2024.

many of the 650 open dispensaries are CAURD dispensaries, but Plaintiffs believe it is a substantial number since CAURD applicants began the licensing process in 2022.

Second, as of March 20, 2025, Defendants permit cultivators to sell their products at events like farmer's markets in partnerships with dispensaries, which they can do with CAURD licensees.[3]

### 5. *The Requested Injunction Does Not Exceed Rule 65(d)*

Contrary to Defendants' assertion, Plaintiffs' requested injunction does not exceed Rule 65(d) and Plaintiffs do not seek an injunction against nonparties.  Plaintiffs ask the Court to enjoin Defendants from issuing any Licenses, including already issued Licenses to the November Pool. Defendants do not offer any authority that enjoining an agency from issuing licenses is an injunction against the nonparty licensees.  Moreover, Defendants ignore the cases Plaintiff cited where the courts ordered agencies to not issue licenses.

### B. December Pool

Defendants' arguments regarding the December Pool fail.  ***First***, Defendants argue that Plaintiffs have no harm because Defendants granted Plaintiffs three numbers in the lottery (as though Plaintiffs were "extra priority" applicants) notwithstanding that Plaintiffs' owners convictions were from out-of-state.  Defendants already made that argument ad nauseum 2024 in their Opposition to the TRO and PI (dkt. #25 at 15); in their Motion to Dismiss (dkt. #30-1 at 15); and during oral argument at the hearing (Transcript, dkt. #50 at 17-18).  The Court already rejected that argument.  (Order, Dkt. 36 at n.21.)

***Second***, Defendants argue Plaintiffs have no harm because Defendants will treat out-of-state cannabis convictions the same as qualifying in-state convictions for purposes of the December Pool. Defendants have no authority to do that, and Defendants' solution is no solution at all.  In New York, "[a]gencies are required to abide by their own regulations." *Gilman v. New York State Div. of Hous. & Cmty. Renewal*, 99 N.Y.2d 144, 151 (2002).  Defendants cannot ignore that Plaintiffs' majority

---

[3]   *See* Announcement https://cannabis.ny.gov/cse-permits.

owners both have cannabis convictions from California and treat the convictions as though they were from New York. "The rules of an administrative agency, duly promulgated, are binding upon the agency as well as upon any other person who might be affected." *Frick v. Bahou*, 56 N.Y.2d 777, 778 (1982). Defendants may wish to operate under a different internal guideline, but "if guidelines conflict with a regulation, the regulation prevails." *Rovinsky v. Zucker*, 167 A.D.3d 122, 126 (2018). "Although it is true that an agency's interpretation of its own regulation generally is entitled to deference, courts are not required to embrace a regulatory construction that conflicts with the plain meaning of the promulgated language." *Visiting Nurse Serv. of New York Home Care v. New York State Dep't of Health*, 5 N.Y.3d 499, 506 (2005).

Instead of simply ignoring their own regulations, Defendants must amend the regulations in compliance with the State Administrative Procedures Act. Article II establishes the "minimum procedures for all agencies, provided, however, an agency may adopt by rule additional procedures not inconsistent with statute." N.Y. A.P.A. Law § 201. The minimum requirements are listed in sections 202-203, and they include preparation of a regulatory impact statement, a regulatory flexibility analysis, a rural area flexibility analysis, and a sob impact statement; publication of the proposed regulation; a public comment period; and publication and filing.

On top of all this, it is not clear Defendants even have the authority to amend the regulations to accept out of state convictions. The state enabling statute requires that "extra priority" applicants have an owner who "was convicted of a marihuana-related offense prior to the effective date of this chapter, or had a parent, guardian, child, spouse, or dependent, or was a dependent of an individual who, prior to the effective date of this chapter, was convicted of a marihuana-related offense." NY CANBS § 87(3)(c). Thus, if that state statute requires out-of-state convictions, Defendants have no ability to amend that requirement even by a duly promulgated regulation.

/ / /

18

## III.    CONCLUSION

For the reasons set forth above, Plaintiffs ask this Court to grant the Motion.

Dated: May 7, 2026

Respectfully submitted,

**JEFFREY M. JENSEN**

By:    */s/ Jeffrey M. Jensen*
Jeffrey M. Jensen, Esq.
*Pro Hac Vice*
New York Reg. No.: 5375704
*Attorney for Plaintiffs – Lead Counsel*
9903 Santa Monica Blvd. #890
Beverly Hills, CA 90212
(310) 909-7043
Email: jeff@jensen2.com