**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

VARISCITE NY FOUR, LLC and
VARISCITE NY FIVE, LLC,

                    Plaintiffs,

      v.

NEW YORK STATE CANNABIS CONTROL
BOARD, *et al.*,

                    Defendants.

                              1:23-cv-01599 (AMN/PJE)

---

**APPEARANCES:**                                          **OF COUNSEL:**

**JEFFREY M. JENSEN, PC**                    **JEFFREY M. JENSEN, ESQ.**
9903 Santa Monica Boulevard – Suite 890
Beverly Hills, California 90212

**HACKER MURPHY LLP**                         **THOMAS J. HIGGS, ESQ.**
28 Second Street
Troy, New York 12180
*Attorneys for Plaintiffs*

**HON. LETITIA JAMES**                           **BENJAMIN L. LOEFKE, ESQ.**
New York State Attorney General            **RYAN W. HICKEY, ESQ.**
The Capitol
Albany, New York 12224
*Attorney for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION & ORDER**

## I.     INTRODUCTION

On December 18, 2023, Variscite NY Four, LLC and Variscite NY Five, LLC ("Plaintiffs")

commenced this action against Defendants New York State Cannabis Control Board, New York

State Office of Cannabis Management ("OCM"), Tremaine Wright, and Chris Alexander

(collectively "Defendants")[1] pursuant to 42 U.S.C. § 1983, alleging that New York's Adult Use

Application Program (the "Adult Use Application Program"), which accepted applications for

adult use retail dispensary cannabis licenses ("Adult Use Licenses") from October 4, 2023 through

December 18, 2023, violates the dormant Commerce Clause. Dkt. No. 1 (the "Complaint").

Presently before this Court is Plaintiffs' renewed motion for a temporary restraining order and

preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. *See* Dkt. No.

68 ("Renewed Motion" or "Motion").

For the reasons set forth below, Plaintiffs' Motion is denied in part.

## II.    BACKGROUND

The Court assumes the Parties' familiarity with the facts as alleged in the Complaint. On

December 28, 2023, approximately ten days after commencing this action, Plaintiffs initially

moved for a temporary restraining order and a preliminary injunction, seeking to enjoin

Defendants from issuing Adult Use Licenses to applicants in the November and December Pools,

or issuing any additional licenses under the Conditional Adult-Use Retail Dispensary ("CAURD")

Application Program.[2] *See* Dkt. Nos. 10-14. Separately, on January 16, 2024, Defendants moved

to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6), contending that Plaintiffs lacked

standing and the Complaint failed to state a claim for relief because the dormant Commerce Clause

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Jessica C. Garcia and Susan Filburn have been substituted as Defendants in place of Tremaine Wright and Chris Alexander, who were sued solely in their official capacities. *See* Dkt. No. 75.

[2] As background, the Adult Use Application Program split the Adult Use applicants into two pools, a "November Pool," for applicants who could demonstrate proof of control over a location for their dispensary, and a "December Pool," for all other applicants, with a separate number of licenses available to applicants in each pool. *See* Dkt. No. 53 at 9-10. To determine the order of review, New York randomly assigned applicants positions in the November or December review queue (respectively, the "November Queue" and the "December Queue"). *Id.* at 10.

does not apply to New York's marihuana licensing requirements.  *See* Dkt. No. 30-1 at 34.[3]  After a hearing on Plaintiffs' motion for a temporary restraining order and preliminary injunction, this Court denied Plaintiffs' motion on February 2, 2024, holding that the dormant Commerce Clause does not apply to the market at issue, given that marihuana remains federally illegal.  *See* Dkt. No. 36.  On February 11, 2024, Plaintiffs timely appealed, *see* Dkt. No. 38, and on August 12, 2025, the Second Circuit vacated this Court's decision denying Plaintiffs' motion for preliminary relief and remanded the case for further proceedings consistent with its opinion.  *See* Dkt. No. 53 at 46.  On March 25, 2026, this Court denied Defendants' motion to dismiss pursuant to the Second Circuit's mandate, which determined the legal issues raised in the motion to dismiss.  *See* Dkt. No. 67.

On November 5, 2025, after the Second Circuit issued its mandate, Plaintiffs filed a motion seeking leave to conduct limited expedited discovery, *see* Dkt. No. 56, which Defendants opposed.  *See* Dkt. No. 62.  On January 7, 2026, Magistrate Judge Evangelista held a hearing and reserved ruling on the motion for expedited discovery.  Dkt. No. 61.[4]  On May 15, 2026, Magistrate Judge Evangelista deemed Plaintiffs' expedited discovery demands to be served on Defendants as of that date and set forth expedited procedures for production in response to those demands and the resolution of any disputes related to the same.  *See* Dkt. No. 84.

---

[3] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

[4] That same day, Plaintiffs also moved to disqualify Benjamin Loefke and the Office of the Attorney General as defense counsel in this matter.  Dkt. No. 63.  On May 7, 2026, Magistrate Judge Evangelista denied Plaintiffs' motion and recommended that this Court also deny Plaintiffs' request for certification of the question of disqualification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  *See* Dkt. No. 75.  On June 11, 2026, this Court adopted the Report-Recommendation in its entirety.  Dkt. No. 91.

On April 29, 2026, Plaintiffs filed a Renewed Motion for a temporary restraining order and preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, *see* Dkt. No. 68, which seeks to (i) enjoin Defendants from issuing any retail dispensary cannabis licenses under the Adult Use Application Program, including to applicants in both the November and December Pools; and (ii) enjoin already-issued cannabis licenses by requiring dispensaries opened before August 12, 2025 to close within sixty days, and requiring dispensaries opened after August 12, 2025 to close within thirty days. *See* Dkt. No. 69 at 24. With leave of Court, Defendants opposed Plaintiffs' Renewed Motion, *see* Dkt. No. 74, and Plaintiffs replied in further support of the Motion. Dkt. No. 77.

On May 15, 2026, Plaintiffs filed a letter motion requesting that the Court hold Plaintiffs' Renewed Motion in abeyance as to applicants in the November Pool until the Parties complete expedited discovery. *See* Dkt. No. 85. On May 22, 2026, the Court granted Plaintiffs' request to hold a ruling as to the November Pool in abeyance. Dkt. No. 88. On June 5, 2026, the Court held a hearing on the Renewed Motion as to the December Pool. *Id.*

## III.    STANDARD OF REVIEW

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in original). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (citations omitted). Further, a preliminary injunction is "never awarded as of right," *Ayco Co., L.P. v. Frisch*, 795 F. Supp. 2d 193, 200 (N.D.N.Y. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)),

4

and the decision to grant such relief "rests in the sound discretion of the district court[.]" *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

A party seeking preliminary injunctive relief must establish: "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n*, 883 F.3d 32, 37 (2d Cir. 2018). When deciding a motion for a temporary restraining order, the Court follows the same legal standard as that for a motion for a preliminary injunction. *Freeman v. McKnight*, No. 07-cv-1123, 2007 WL 3254431, at *1 (N.D.N.Y. Nov. 2, 2007) (citing *Local 1814, Intern. Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992)); *see also Basank v. Decker*, 449 F. Supp. 3d 205, 210 (S.D.N.Y. 2020) ("It is well established that in [the Second] Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." (citation omitted)). Additionally, in this District, a request for a temporary restraining order made through an order to show cause "must include an affidavit clearly and specifically showing good and sufficient cause why the standard motion procedure (*i.e.*, advanced notice, 21 days for an opposition, and 7 days for a reply) cannot be used[.]" N.D.N.Y. L.R. 7.1(e).

In certain circumstances, a plaintiff seeking a preliminary injunction must satisfy a heightened standard. The heightened standard applies when either "[i] the movant is seeking to modify the status quo by virtue of a *mandatory* preliminary injunction (as opposed to seeking a *prohibitory* preliminary injunction to maintain the status quo), or [ii] where the injunction being sought will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits[.]" *Yang v. Kosinski*, 960 F.3d 119, 127-28 (2d Cir. 2020) (internal quotation marks omitted) (emphasis in original); *see also N. Am.*

*Soccer League*, 883 F.3d at 37 n.5 (noting that "[t]he 'status quo' in preliminary-injunction parlance is really a 'status quo ante'" (quoting *Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 90 (2d Cir. 1983))).

## IV.     DISCUSSION

As an initial matter, pursuant to its order issued on May 22, 2026, the Court addresses the Renewed Motion only as to the December Pool.  *See* Dkt. No. 88.  Additionally, the Court finds that the heightened standard applicable to mandatory preliminary injunctions does not apply to Plaintiffs' Renewed Motion for the same reasons that this Court explained in its Memorandum-Decision & Order on Plaintiffs' first motion for a preliminary injunction and temporary restraining order.  *See* Dkt. No. 36 at 12-13.  Because Defendants have not begun issuing licenses to retail applicants in the December Pool, the relief that Plaintiffs seek as to the December Pool is prohibitory in nature.  *See id.*; *see also* Dkt. No. 74 at 11 (noting that Defendants are currently still processing applications in the November Pool and have only begun reviewing cultivator applications in the December Pool to address anticipated shortfalls in supply).

Accordingly, the Court applies the typical preliminary injunction standard, rather than the heightened standard, in its review of the Renewed Motion.

### A.  Likelihood of Success on the Merits

Plaintiffs have demonstrated a likelihood of success on the merits as to the December Pool. The Second Circuit expressly held that Plaintiffs "can challenge the issuance of . . . December Pool licenses, based on purported unlawful ordering within the December Queue," and that Plaintiffs are "likely to succeed on the merits of [their] challenge to the ordering of the December Queue." *See Variscite NY Four v. New York State Cannabis Control Bd.*, 152 F.4th 47, 59, 65 (2d Cir. 2025).   Specifically, the Circuit found that "New York's [e]xtra [p]riority regime is discriminatory, even though it advantages only a subset of likely New Yorkers," because the

6

dormant Commerce Clause "does not tolerate discrimination in favor of a sliver of the in-state market." *Id.* at 64.  Nothing in the record reflects any intervening change in circumstances that would warrant a different ruling.  Accordingly, Plaintiffs have shown a likelihood of success on the merits of their challenge to the issuance of December Pool retail licenses, based on purported unlawful ordering within the December Queue.

### B.  Irreparable Harm

Notwithstanding Plaintiffs' showing of a likelihood of success on the merits with respect to the December Pool, the Court concludes that Plaintiffs cannot establish irreparable harm as to the December Pool at this stage of the proceedings.

Plaintiffs argue that they will face irreparable harm due to their risk of being excluded from the market.  Specifically, given that Defendants will issue only a finite number of retail cannabis licenses in New York State, and "New York has indicated that only those earliest in the December Queue are likely to receive licenses," *see Variscite NY Four*, 152 F.4th at 63, Plaintiffs argue that they will be delayed, if not foreclosed, from entering New York's retail cannabis market if they do not receive "extra priority" in the December Pool, *see* Dkt. No. 69 at 17-19—"that is, triple the chance at an early slot."[5] *Variscite NY Four*, 152 F.4th at 55.

However, Defendants contend that Plaintiffs' Renewed Motion as to the December Pool licenses should be denied because "Plaintiffs have already effectively received that relief."  Dkt. No. 74 at 6.  Specifically, Defendants argue that "in an abundance of caution given this ongoing litigation," Defendants have treated Plaintiffs identically to all other applicants entitled to "extra

---

[5] Applicants in the December Pool who indicated that they were eligible for "extra priority" received three random numbers in the December Queue, as opposed to two random numbers, which "priority" applicants received, or one random number, which "non-priority" applicants received. *See* Dkt. No. 74 at 10.

priority" in the December Pool, i.e., they accorded Plaintiffs three randomly assigned queue numbers, which they also accorded similarly situated applicants with New York State marihuana convictions eligible for "extra priority." *See id.* at 6-7, 10-11.

The Court agrees with Defendants.  "While a defendant's 'voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice,' it is nonetheless 'an important factor bearing on the question whether a court should exercise its power' to entertain a request for injunctive relief or declare it moot." *Holland v. Goord*, 758 F.3d 215, 223 (2d Cir. 2014) (quoting *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 (1982)).  Additionally, "when a government defendant . . . makes representations that certain conduct has been discontinued, they are entitled to some deference." *Wagschal v. Skoufis*, 442 F. Supp. 3d 612, 621 (S.D.N.Y. 2020) (internal quotation marks and citation omitted), *aff'd*, 857 F. App'x 18 (2d Cir. 2021); *see also Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 109 F. Supp. 3d 626, 630 (S.D.N.Y. 2015) (noting that "[s]ome deference must be afforded to the representations of a public authority that certain conduct has been discontinued"), *aff'd*, 815 F.3d 105 (2d Cir. 2016).

Here, Defendants affirm that they will "continue to treat Plaintiffs in the same manner as similarly situated applicants with in-state convictions, if and when OCM reviews Plaintiffs' applications."  Dkt. No. 74 at 19 (citing Dkt. No. 74-1 at ¶¶ 22, 32 (declaring that OCM will treat all marihuana-related convictions in the retail December Queue—both out-of-state convictions and New York state convictions—as qualifying to receive extra priority)).  Thus, for purposes of the current Motion, Defendants have shown that their change in the treatment of Plaintiffs' December applications "has 'sufficiently altered' the circumstances . . . 'so as to present a substantially different controversy from the one that existed'" when Plaintiffs filed their initial motion for a

8

preliminary injunction and temporary restraining order, and when the Second Circuit reviewed that motion on interlocutory appeal. *Am. Freedom Def. Initiative*, 109 F. Supp. 3d at 631 (quoting *Lamar Advert. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 378 (2d Cir. 2004)); *see also Variscite Four*, 152 F.4th at 55 (noting that Defendants "represented that without [e]xtra [p]riority, for which they do not qualify, [Plaintiffs] will *inevitably forfeit* at least their most favorable positions in the December Queue" (emphasis added)).

Accordingly, at this time, Plaintiffs have failed to demonstrate that they will suffer irreparable injury absent injunctive relief. *See, e.g.*, *Chen v. Amazon.com, Inc.*, No. 23-cv-5324, 2023 WL 7412219, at *3-4 (E.D.N.Y. Nov. 9, 2023) (denying preliminary injunctive relief where defendant represented that it had "permanently stopped sending" purportedly defamatory emails about plaintiff); *RQ Innovasion, Inc. v. Carson Optical, Inc.*, No. 19-cv-3886, 2019 WL 4359456, at *8-9 (E.D.N.Y. Aug. 21, 2019) (finding no irreparable harm where videos alleged to violate the Lanham Act no longer appeared in the challenged manner), *report and recommendation adopted*, 2019 WL 4346264 (E.D.N.Y. Sept. 12, 2019).

*     *     *

Because a "finding of no showing of irreparable harm is dispositive," *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 68 (2d Cir. 2007), the Court need not address the remaining factors. *See, e.g.*, *Harley Marine NY, Inc. v. Moore*, No. 23-cv-163, 2023 WL 3620720, at *9 (N.D.N.Y. Mar. 24, 2023) (declining to address the remaining elements necessary to obtain injunctive relief where the plaintiff failed to demonstrate the probability of irreparable harm); *see also JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 36 (2d Cir. 2015) ("Because irreparable harm is the '*sine qua non* for preliminary injunctive relief,' we conclude that

[plaintiff's] motion for a preliminary injunction fails at the irreparable harm stage, and we do not reach the other components of the preliminary injunction inquiry." (citation omitted)).

Accordingly, given that Plaintiff has failed to establish the requisite showing of irreparable harm, Plaintiffs' Renewed Motion as to the December Pool is denied. Should Defendants reverse course and no longer accord Plaintiff's December applications extra priority, Plaintiffs may make a renewed application to the Court for preliminary injunctive relief. *See Howe v. Burwell*, No. 15-cv-6, 2015 WL 4479757, at *16 (D. Vt. July 21, 2015) (noting that, "[i]n the event the [f]ederal [d]efendants withdraw th[eir] concession or refuse to make it permanent, nothing prevents [p]laintiff from renewing his motion").

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiffs' motion for a temporary restraining order and preliminary injunction, Dkt. No. 68, is **DENIED in part**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 11, 2026
      Albany, New York

Anne M. Nardacci
U.S. District Judge

10